**UNITED STATES of America,**
**Appellant,**

v.

**Cecilio SEIJO, Appellee.**

**No. 524, Docket 78–1352.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1979.

Decided March 26, 1979.

Harvey M. Stone, Asst. U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Mark A. Summers, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellant.

Robert A. Akeson, Mineola, N. Y., for appellee.

Before MOORE and MANSFIELD, Circuit Judges, and WYATT,* District Judge.

MOORE, Circuit Judge:

This is an appeal by the United States of America (hereinafter usually "the Government") pursuant to 18 U.S.C. § 3731 from an order of the United States District Court for the Eastern District of New York, made on July 12, 1978, granting defendant's motion to suppress certain depositions taken by the Government. The order appealed from came about under the following circumstances.

On March 20, 1978, pursuant to a search warrant, investigators of the Immigration and Naturalization Service ("INS") discov-ered five allegedly illegal aliens secreted in the basement of the home of the defendant Cecilio Seijo. All, including Seijo, were arrested. The next day, Seijo, by complaint, was charged with violation of 8 U.S.C. § 1324(a)(3) (harboring illegal aliens). On March 22, 1978, final orders for the deportation of all five aliens were made by an Immigration Judge.

The testimony of the five illegal aliens was needed for prosecution of the offense with which Seijo was charged. However, a final order of deportation lays a statutory duty on the Attorney General to carry out the deportation with "reasonable dispatch" and in any event within six months from the date of the order. 8 U.S.C. § 1252(c). INS takes the position that it has no authority to delay deportation so that an illegal alien can be available in this country to testify; it insists that ordinary material witness procedures be followed with illegal aliens needed to testify. (A 151).

Material witness procedures are not entirely clear-cut. The relevant provisions for criminal cases are in 18 U.S.C. § 3149, which has been construed as authorizing the arrest and detention of a material witness until his needed testimony is given, by deposition or otherwise. *Bacon v. United States*, 449 F.2d 933, 936–39 (9th Cir. 1971); see *Hurtado v. United States*, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973). It should be noted, however, that 18 U.S.C. § 3149 directs release of any material witness "if the testimony of such witness can adequately be secured by deposition, and further detention is not necessary to prevent a failure of justice".

The prosecutor in the case at bar proceeded in good faith to try to keep the five witnesses available here to testify. On March 22, 1978, the same day as the final deportation order, he arranged with INS that the aliens not be deported until their status as material witnesses was resolved.

* Honorable Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation.

We are told in the Government's brief (pp. 3–4) that in April, 1978, the prosecutor was notified that INS "was concerned about holding the aliens in custody any longer. . . ." To avoid removal of the five witnesses by deportation, the prosecutor, on April 17, 1978, swore to a material witness affidavit before a Magistrate; he asked that they be required to give bail or, in default thereof, that they be held as material witnesses in the custody of the Marshal.

The Government's brief (pp. 4–5) further states that the five witnesses were on the same day brought before Magistrate Chrein, that bail of $1,000 cash was set for each of them as material witnesses, that counsel for them was assigned, that they were told that the matter would be heard again on April 26, and (doubtless having in mind the directions in 18 U.S.C. § 3149 and F.R.Cr.P.Rule 46(g)) that the Magistrate would release them on April 26 if their depositions had not been taken by that time.

The hearing for April 26 was adjourned to April 27, and Magistrate Caden presided. Although given notice, counsel for Seijo, due to other engagements, did not attend. Counsel for the witnesses moved for their immediate release, citing the long time (over a month) they had been in custody. The prosecutor opposed, emphasizing that their testimony was needed and that if they were released as material witnesses, INS would deport them. The Magistrate denied the motion for release but said that he would entertain it anew on Monday, May 1, and indicated a disposition to grant it.

On May 1 the prosecutor turned over to counsel for Seijo the statements the five witnesses had made, furnished an interpreter, and made the witnesses available for interview. On the same day, all (including counsel for Seijo) appeared before the Magistrate. The Government's brief states (p. 6) that the hearing was adjourned to May 2, the Magistrate stating that he would then release the witnesses, whether or not their depositions had been taken. Apparently the five witnesses, knowing they had been

ordered deported to El Salvador (their home), preferred to go back there rather than languish in a jail here. Their counsel accordingly was pressing the Magistrate to release them.

On May 2, over the strenuous objections of the prosecutor, Magistrate Chrein ordered the witnesses released for deportation, noting that they would not be deported forthwith and that the prosecutor could go to a district judge. On the next day, May 3, in order to prevent deportation of the witnesses, the prosecutor secured from Judge Pratt a writ of habeas corpus ad testificandum directed to INS, for the witnesses' deposition testimony. On the same day, May 3, a grand jury returned a five-count indictment against Seijo, each count charging a violation of 8 U.S.C. § 1324(a)(3) with respect to one of the five material witnesses. The following day, May 4, Seijo pleaded not guilty to the indictment. The prosecutor then moved for an order that the depositions of the five aliens be taken, supported by an affidavit reciting that INS had no power to keep the aliens in this country, that the Magistrate had ordered their release, and that depositions were the only way their testimony could be secured. After hearing the motion in open court and after hearing objections by counsel for Seijo to any deportation of the alien witnesses, Judge Costantino granted the motion, ordered that the depositions be taken and signed a written order that this be done. (A 7). He explained that he had no power to prevent deportation of the witnesses. (A 134).

The five depositions were then taken on May 4. The attorney for Seijo was present and cross-examined each of the witnesses. The five aliens were then deported to El Salvador on May 9, 1978.

The indictment against Seijo had by now been assigned to Judge Pratt for trial and at a pretrial conference on June 22 counsel for Seijo for the first time raised an objection to the admissibility, as distinguished from the taking, of the deposition testimony. Then followed an interesting colloquy between court and counsel:

"The Court: Were you saying that you're not objecting the issues of the Deposition in general, but there may be specific questions that you have?

"Mr. Akeson: That is correct." (A 102).

The court stated that the defendant "[hasn't] given me one legal objection to the use of the Depositions". (A 79).

This background history was before the trial judge on July 11th and 12th. The procedure, followed by the prosecutor, was clearly set forth in the Federal Rules of Criminal Procedure, Rule 15(e), which reads as follows:

"USE. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence . . . ."

Rule 804(a), Fed.R.Evid., provides in pertinent part:

"A declarant is not unavailable as a witness if his . . . absence is due to the procurement or wrongdoing of the proponent of his statement *for the purpose of preventing the witness from attending or testifying.*" (Emphasis added).

After hearing lengthy argument the trial court said:

"For purposes of interpretation of Rule 15(e), combined with 804(a) in the present context of a prosecution of a Defendant accused of harboring illegal aliens, I find and hold that the deportation of the aliens that the Defendant is accused of harboring as a matter of Constitutional requirement under the Fifth [sic] Amendment right of confrontation be deemed to have been for the purpose of preventing the Witness from attending.

"For the Government to ship out of the Country the individuals whose very presence here is an essential part of the crime with which the Defendant is charged, and whose testimony is essential to establish the element of willfulness and knowledge on the part of the Defendant, can only be taken as a deprivation of an essential element in a fair trial for the Defendant.

"For the Jury to properly assess the credibility of these Witnesses it is my view that it is essential that they be present at the trial to testify. It is particularly so when we're dealing with problems that are interjected by the need for an interpreter." (A 55–56).

With no actual proof that the Government did "procure" the witnesses' absence "for the purpose of preventing [them] from attending or testifying", the Court ruled:

"I do hold that when we're dealing with a single Department of the Government and when we're dealing with a crime which is specifically under the complaint and jurisdiction of the Immigration and Naturalization Service, for them to remove from the process of this Court the very individual who formed the focal point of the trial, for whatever the subjective motives may be, amounts to having done so for the purpose of preventing them from attending or testifying.

"In other words, they knew the obvious consequences. They were well aware of the need for their testimony at the trial, and they must be charged with having intended the consequences of their own acts. . . ." (A 57–58).

The court did state that he did "not mean to imply in any way that the [INS] acted with a specific intent or malicious action or connived in any way to keep the testimony of these Witnesses away from the Jury. . . ." (A 57).

Judge Pratt based his ruling in part on an apparent inconsistency between the language of Rule 15(e), F.R.Crim.P., and Fed. R.Evid. 804(a), which govern here, and 18 U.S.C. § 3503(f), which provides that a deposition taken in criminal proceedings with respect to "organized criminal activity" may be used if the witness is out of the United States unless "the absence of the witness was procured by the party offering the deposition" (without any qualification, such as that in Fed.R.Evid. 804(a), to the effect that the procurement must have been

120

made "for the purpose of keeping the witness away from trial"). Judge Pratt reasoned that to make it easier for the Government to use depositions in a proceeding not involving organized criminal activity, such as the present case, would be illogical because "the general intent of Congress is to be tougher on organized crime than on ordinary criminals". (A 28). Therefore, although not finding any proof of malicious intent on the part of the INS, he "deemed" such purpose to have been shown from the fact of deportation.

 We disagree with this analysis. In 1970, when § 3503 was enacted, Rule 15, F.R.Cr.P., permitted only a criminal defendant to take depositions. When Rule 15 was later amended in 1975 to permit the Government also to take depositions, provided the requirements of Fed.R.Evid. 804(a) were met, it was clearly Congress' intent to expand the potential for Government depositions in criminal cases. There is therefore no reason not to apply the plain and literal language of Rule 804(a) merely because Congress did not also amend the language of § 3503. Whether or not § 3503 will be amended or construed to impose the same requirements as Rule 804(a) remains to be seen. The issue is largely academic for the reason that the Government usually must decide whether a defendant is believed to be engaged in organized criminal activity, rendering § 3503 rather than F.R. Cr.P. 15 and Fed.R.Evid. 804(a) applicable.

Since there is no evidence that the deported aliens were absent due to "the procurement or wrongdoing" of the Government "for the purpose of preventing [those deposed] from attending or testifying" and the record, to the contrary, reveals that the Government did everything in its power to hold the aliens and, failing that, to make their testimony available as provided by law, the order appealed from is reversed. Upon such trial as may be held, the depositions in question may be introduced into evidence subject only to such objections as may be made as to the relevance and materiality of specific questions and answers. No costs to either party.