UNITED STATES of America, Appellee,

v.

Luis TERRAZAS–MONTANO, Appellant.

No. 84–1087.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1984.

Decided Oct. 31, 1984.

Charles M. Meyer, Omaha, Neb., for appellant.

Robert B. O'Neal, Asst. U.S. Atty., Papillion, Neb., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Luis Terrazas-Montano appeals from his conviction on one count of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(2) (1982) and 18 U.S.C. § 2 (1982). He argues that: he was denied his sixth amendment right to confront four witnesses whose depositions were televised; there was no genuine government effort to secure the attendance of these witnesses; the witnesses were coerced; and no exceptional circumstances justified taking the depositions. We affirm.

The Nebraska Highway Patrol stopped an automobile carrying seven Mexican aliens and found a registration document that listed Terrazas-Montano's address. Immigration and Naturalization Service (INS) investigators went to the address and discovered four Mexican aliens, who were in the country illegally. All four were arrested, taken to the local county jail, and held as material witnesses. Terrazas-Montano was indicted for willfully and knowingly transporting the men from Phoenix to Omaha.

After the four men were jailed, they commenced a hunger strike. An INS agent attempted to convince them to end their protest, but they refused to eat until they were returned to Mexico. A medical examination established that the four were suffering ill effects from not eating. The local sheriff refused to hold the men. They were transferred to a jail in Omaha, Nebraska, where the authorities agreed to take them in only for the weekend. On September 23, 1983, the United States filed a motion seeking to videotape depositions of the four men. After a hearing that day, the magistrate ordered that the depositions be taken on September 25 and that the aliens be released thereafter.

Videotaped depositions were taken in the classroom of the Omaha jail. Terrazas-Montano, his attorney, the government attorney, a court-appointed interpreter, a court reporter, and a representative of the INS were present. The INS representative told the witnesses that: the depositions would be recorded on videotape, which would be played at a later time; they would be placed under oath and asked to tell the truth; and regardless of what they said or didn't say, they would be returned to Mexico the next day. The depositions were recorded on videotape, with a simultaneous record made by a court reporter. The witnesses were questioned by the government attorney and cross-examined by Terrazas-Montano's counsel, with opportunities for redirect and recross. The interpreter translated into Spanish for the witnesses and into English for counsel and the court reporter. The following day, the four men were returned to INS custody and deported. Before their departure, they told the INS that under no circumstances would they return to the United States as witnesses.

Before trial, the district court[1] ruled on objections to the video tapes and ordered that the tapes and transcripts be edited. The edited tapes were introduced into evidence and played for the jury. Edited copies of the transcript were passed to the jury for use during the playing of the tapes. The trial resulted in Terrazas-Montano's conviction on one count of transporting an alien.

■ Terrazas-Montano raises claims relating to the taking of the depositions and their introduction into evidence. First, he argues that the taking of the depositions was not justified by "exceptional circumstances." Fed.R.Crim.P. 15(a). The record shows that the four witnesses had engaged in a hunger strike for over ten days to secure their return to Mexico, that efforts to convince them to eat had failed, and that they had been found by a physician to be suffering ill effects. Moreover, local authorities had refused to continue to house the witnesses. The magistrate did not abuse his discretion in finding that exceptional circumstances existed. *See United States v. Tunnell*, 667 F.2d 1182, 1186–87 (5th Cir.1982). Terrazas-Montano also argues that his counsel was not given enough time to prepare for the deposition. The magistrate set the depositions two days from the hearing on the motion. The witnesses had been in custody for more than a month between the time of indictment and the taking of the depositions. Moreover, Terrazas-Montano knew all the witnesses, as they had been living in his basement.

■ The appellant also argues that showing the depositions at trial violated the confrontation clause and Federal Rule of Criminal Procedure 15(c). We reject this contention. First, the witnesses had been returned to Mexico and had told the INS representative that they would not return to testify. They were undoubtedly beyond the reach of process of the United States District Court for the District of Nebraska. We think it evident that the witnesses were unavailable, under circumstances which reflect no bad faith on the part of the govern-

ment. To require the government to show that it was unable to procure the attendance of the witnesses under Rule 804(a)(5) of the Federal Rules of Evidence would compel a useless act. *See Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 211–13, 92 S.Ct. 2308, 2312–2313, 33 L.Ed.2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–1322, 20 L.Ed.2d 255 (1968); *United States v. Seijo*, 595 F.2d 116, 120 (2d Cir.1979). Second, the trial-type setting of the depositions produced sufficient "indicia of reliability" to satisfy the sixth amendment. *See Ohio v. Roberts*, 448 U.S. at 62–66, 100 S.Ct. at 2537–2539. The record does not support the claim that the witnesses were coerced into giving unreliable testimony.

In *United States v. Benfield*, 593 F.2d 815 (8th Cir.1979), this court held that the admission of a videotaped deposition violated the defendant's confrontation rights. Because of the witness's condition, the lower court had ordered that Benfield could be present at the deposition but outside the vision of the witness. The defendant and witness were in different rooms, with the defendant viewing the witness on a monitor and utilizing a buzzer to summon his counsel as he desired. The witness could not see the defendant and evidently was unaware that he was present in the building. The court observed that admission of taped depositions could be proper, however, where "the procedure more nearly approximates the traditional courtroom setting." *Id.* at 821. The decision was not to be "regarded as prohibiting the development of electronic video technology in litigation." *Id.* *Benfield* is easily distinguished from the case at bar. Terrazas-Montano faced the witnesses at the deposition, and his counsel was given full opportunity to cross-examine. With the presence of the interpreter, the court reporter, the defendant, the witnesses, and counsel for the parties, the procedure approximated a traditional

---

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

courtroom setting even though it was held in a jail classroom.

 Finally, the use of an interpreter did not abridge Terrazas-Montano's confrontation rights. Had the witnesses been produced for trial, courtroom interrogation could have been accomplished only through an interpreter. Use of the interpreter at the deposition was equally necessary.

We have carefully examined the record before us and find no error in allowing the taking of the depositions or their introduction into evidence during the trial. The judgment of the district court is affirmed.