UNITED STATES of America

v.

George HUANG, William Chen and, Ho–Hsin Fan, Defendants.

No. 92 Cr. 996 (RPP).

United States District Court, S.D. New York.

Jan. 22, 1993.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. by Michael Gertzman, Asst. U.S. Atty., New York City, for the U.S.

Roger Bernstein, New York City, for defendant Ho–Hsin Fan.

Flamhaft Levy Kamins & Hirsch by Stephen Flamhaft, Brooklyn, NY, for defendants George Huang and William Chen.

Leonard F. Joy, The Legal Aid Soc. by Tracey Gaffey, Federal Defender Services Unit, New York City, for Material Witness Mao–Keng Chang.

Arnold and Porter by Jeffrey Mendelsohn, New York City, for Material Witness Pei–Fu Chaing.

Ian Weinstein, Lincoln Square Legal Services, New York City, for Material Witness Chin–Lai Lin.

Ronald Garnett, New York City, for Material Witness Jiann–Tzong Tsay.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Pei–Fu Chaing, Chinn–Lai Lin, Mao–Keng Chang and Jiann–Tzong Tsay (collectively, the "material witnesses"), four of the five crew members of the Chin Wing # 18, are detained by the government as material witnesses pursuant to 18 U.S.C. § 3144. On December 14, 1992, they and their fellow crew member, Jeng–Shinn Jang, moved pursuant to section 3144 and Rule 15(a) of the Federal Rules of Criminal Procedure to have their depositions taken and to be released from detention in order to return home, to Taiwan.[1] The government supported the motions of the material witnesses, while Defendants George Huang, William Chen and

Ho–Hsin Fan opposed them. After ensuring that the government provided the Defendants with pretrial discovery, the Court permitted the videotaped depositions of the material witnesses. After the material witnesses were deposed by videotape, Defendants moved for an order that conditioned the release of the material witnesses and prevented the government's deportation of the witnesses on the ground that the deportation of the material witnesses would violate the defendants' Sixth Amendment rights to confront the witnesses against them and to compulsory process. For the reasons set forth below, Defendants' motion to prevent the unconditioned release of the material witnesses and secure their presence at trial is granted.

## BACKGROUND

The material witnesses were crew members of a fishing trawler, the Chin Wing # 18, which left Taiwan on April 26, 1992. The government alleges that the Defendants used the Chin Wing to transport 150 nationals of the People's Republic of China in a voyage having New York City as its ultimate destination. On September 27, 1992, the Chin Wing, while off the coast of North Carolina, was intercepted by the United States Coast Guard, which detained the ship's captain, Ho–Hsin Fan, five crew members and 150 passengers.

On October 13, 1992, the government filed a complaint in the United States District Court for the Eastern District of North Carolina charging Fan and the two owners of the Chin Wing with conspiracy to smuggle illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A). In connection with the filing of the complaint, a magistrate judge for the Eastern District of North Carolina issued material witness warrants for each of the five crew members. Pursuant to the warrants, the five crew members were arrested and further detained without bail. The United States Attorney for the Eastern District of North Carolina thereafter dismissed its complaint against Fan to permit the United States Attorney's

---

1. Both the government and the defendants agreed to the release of Mr. Jeng–Shinn Jang, a material witness who originally joined the motion in this case, because his testimony was unnecessary to either side. Mr. Jang was subsequently released pursuant to an order of this Court.

office in the Southern District of New York to proceed with the case in this district.

On November 4, 1992, in Atlanta, Georgia, Fan was served with an arrest warrant, and the material witnesses were arrested on material witness warrants, each of which had been issued by a magistrate judge of the Southern District of New York. In December 1992, Defendants Huang, Chen and Fan were indicated on charges of conspiracy to smuggle illegal aliens into the Southern District of New York. To date, the material witnesses have not been charged with any crime.

The depositions of the material witnesses took place from December 21, 1992, to December 28, 1992, and lasted four days. Prior to the depositions, the government made available to the defendants the prior statements made by the material witnesses. The deposition of each witness, with the Court presiding, was taken under oath and videotaped in its entirety. The government conducted direct examination of three of the witnesses, Chang, Chaing, and Lin, who were then cross-examined at length by counsel for the Defendants. Defendants then called a fourth material witness, Tsay, whom the government cross-examined.

During the depositions of December 22 and 28, 1992, Chang made statements which the Defendants assert are favorable with respect to their defense, especially their defense of coercion. For example, Chang testified that on September 1, 1992, the passengers and crew members aboard the Chin Wing were forced out of Haiti by Haitian soldiers with guns. Dec. 22, 1992 Tr. at 35, 106. Chang also testified that, after the Chin Wing was forced out of Haiti, the passengers stated to him and another crew member, Tsay, that, if they had to sail away from Haiti, they "wanted to go to the U.S., and that if" the crew members refused, the passengers would tie them up and "go by themselves." *Id.* at 25–26, 106–07. He further testified that (1) he did not know of any purpose to bring the passengers to the Unit-

ed States, and (2) he did not know that, upon leaving Haiti and heading for the United States, there was any proposal by Defendant Fan, the captain, to land the Chin Wing at an undesignated port of entry in the United States. *Id.* at 149.[2]

Defendants also assert that Tsay's testimony is favorable to the defense because it corroborates Chang's testimony that the passengers threatened that, if they had to leave Haiti, they would have to sail to the United States, and the crew members would be killed if they refused. Dec. 28, 1992 Tr. at 13–14. Tsay testified that the destination of the Chin Wing had been Haiti, that Fan told him that the ship owners hired the passengers "to go to Haiti to work," that the ship would thereafter be used for business purposes to transport goods into Haiti, and that upon reaching Haiti the crew and Fan would be returned to Taiwan. *Id.* at 6–8.

Witnesses Chaing and Lin provided cumulative testimony that Fan informed them during the trip from Taiwan to Haiti that the passengers were travelling to Haiti to work.

After the depositions were concluded, Defendants, to ensure the "live" testimony of the material witnesses at trial in lieu of the videotaped depositions, moved for an order preventing the government from deporting the material witnesses or taking any other action that would materially interfere with Defendants' Sixth Amendment right to obtain the testimony of the four material witnesses at trial.

## DISCUSSION

### I. ORDERING THE DEPOSITIONS

#### A. *Section 3144 and Rule 15*

Rule 15(a) of the Federal Rules of Criminal Procedure provides for the taking of depositions of witnesses in criminal cases in certain circumstances. Rule 15 states in relevant part:

Rule 15. Depositions

---

2. Chang also testified on direct examination by the government that a handwritten note received from the Defendant Chen that concerned going to the United States was burned by crew member Chaing. According to the government, however, in a prior statement to an Immigration and Naturalization Service agent, Chang stated that after the Chin Wing left Haiti, defendant Fan, not defendant Chaing, burned the note about going to the United States. Dec. 23, 1992 Tr. at 2.

(a) When Taken. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition.... If a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness.

Fed.R.Crim.P. 15(a). Under 18 U.S.C. § 3144, a motion by a witness pursuant to Rule 15 must demonstrate that the witness' "testimony ... can adequately be secured by deposition" and that "further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144.[3]

Although Rule 15(a) employs the permissive "may," not the mandatory "shall," when read in conjunction with section 3144 it limits discretion to deny motions to depose material witnesses to instances in which the deposition would not serve as an adequate substitute for the witness' live testimony and a "failure of justice" would ensue were the witness released. See 18 U.S.C. § 3144; Aguilar–Ayala v. Ruiz, 973 F.2d 411, 419 (5th Cir.1992) (section 3144 "provides for the continued detention of a witness where his release would result in a 'failure of justice,'" and "[e]ither party, upon the requisite showing, can effectuate the detention of a material witness pending trial."). "Absent a 'failure

of justice,'" however, "the witness must be released." Ruiz, 973 F.2d at 413.

▋ The use of depositions in lieu of live testimony at trial often contravenes the spirit of the Sixth Amendment.[4] See Barber v. Page, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968) (confrontation clause and use of depositions). Therefore, in cases where the district court allows the government to present the deposition of a witness taken pursuant to Rule 15(a) in lieu of live testimony, its discretion is not broad and must be exercised carefully. United States v. Mann, 590 F.2d 361, 365 (1st Cir.1978).

Several cases have held that the defendant's Sixth Amendment rights were violated where the government failed to take adequate steps to secure the attendance of foreign material witnesses at trial and instead relied on depositions taken pursuant to Rule 15 of the Federal Rules of Criminal Procedure. See United States v. Guadian–Salazar, 824 F.2d 344 (5th Cir.1987); United States v. Mann, 590 F.2d at 367–68; United States v. Simuel, 439 F.2d 687, 688–89 (4th Cir.), cert. denied, 404 U.S. 836, 92 S.Ct. 122, 30 L.Ed.2d 68 (1971). See also Phillips v. Wyrick, 558 F.2d 489, 493 (8th Cir.1977) (exception to confrontation requirement allowing use at trial of preliminary hearing testimony of unavailable witness is very narrow), cert. denied, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); United States v. Lynch, 499 F.2d 1011, 1023–25 (D.C.Cir.1974) (dicta concerning violation of defendant's Sixth Amendment confrontation rights).

---

**3.** Section 3144 of Title 18 reads as follows:

§ 3144. Release or detention of a material witness

If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can *adequately* be secured by deposition, and *if further detention is not necessary to prevent a failure of justice.* Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144 (emphasis added).

**4.** The Sixth Amendment of the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

In *Guadian–Salazar, supra,* the court ordered the videotaped depositions of material witnesses. After the depositions, the witnesses were released at the Mexican border, served with subpoenas, invited to return with promises of assistance but no advances of travel funds. Nevertheless, on appeal, the government conceded that the defendant had been denied his constitutional right of confronting the adverse witnesses. 824 F.2d at 347–48.

By contrast, in *United States v. Eufracio–Torres,* 890 F.2d 266, 270 (10th Cir.1989) (affirming lower court decision), *cert. denied,* 494 U.S. 1008, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990), the district court permitted the government to depose the alien witnesses over the objection of the criminal defendant, denied the defendant's motion to detain the witnesses pending trial, and ordered their release. Proper arrangements were made for the witnesses' return for trial. The witnesses promised to return, but failed to do so. The trial court deemed the witnesses unavailable for trial and admitted their deposition testimony in evidence pursuant to Rule 804 of the Federal Rules of Evidence despite the defendant's objection that using the deposition violated his right to confront the witnesses under the Sixth Amendment. *See* 890 F.2d at 269–70.

▪ The defendant's Sixth Amendment right to confrontation is protected where the defendant has the opportunity to cross-examine the material witnesses under oath, *see United States v. Salim,* 855 F.2d 944, 950 (2d Cir.1988) ("the district court should satisfy itself that defense counsel will be given an opportunity to cross-examine the witness in order to ... ensure a likelihood that the deposition will not violate the confrontation clause"), and where the government, by making reasonable and good faith efforts to ensure the attendance of the witnesses at trial, even though the means employed prove ultimately unsuccessful, satisfies its burden of proving the witness' unavailability as a predicate to the admission of the deposition testimony. *Barber v. Page,* 390 U.S. at 724–25, 88 S.Ct. at 1321–22; *Eufracio–Torres,* 890 F.2d at 270; *see Phillips v. Wyrick,* 558 F.2d at 493 ("admitting the prior testimony of a

witness does not violate the Confrontation Clause where the witness is unavailable for trial, the testimony was given at a previous judicial proceeding against the same defendant, and the defendant had an opportunity to cross-examine the witness."). As the court in *Ruiz* stated:

> deposition testimony is admissible only if the government has exhausted reasonable efforts to assure that the witness will attend trial. The ultimate success or failure of those efforts is not dispositive. So long as the government has employed reasonable measures to secure the witness' presence at trial, the fact that the witness has nevertheless failed to appear will not preclude the admission of deposition testimony. Such a witness will be deemed "unavailable," and the deposition is admissible over the defendant's Confrontation Clause and hearsay objections.

973 F.2d at 418 (citation omitted). If the government is unable to hold the material witnesses or ensure their return for trial and makes the requisite showing of unavailability, then the government need at most make the material witnesses' "testimony available as provided by law" in order to satisfy the requirements of the confrontation clause. *United States v. Seijo,* 595 F.2d 116, 120 (2d Cir.1979).

▪ Here, the government has made efforts to assure that each material witness, save Mr. Jang, will attend trial. On December 21, 1992, the day the depositions began, the government wrote each material witness to officially extend them "an invitation to return to the United States to testify as a witness at the trial...." In the letter, the government states that it "will make all necessary travel arrangements and pay for your expenses, including round trip air fare from Taiwan and all hotel and food expenses while you are in the United States." The letter further provides the name, telephone number and address of the Special Agent each material witness should contact to return to testify at trial. A second letter from the government to each material witness, dated December 31, 1992, provides the name and telephone number of a person who speaks Chinese and resides in Taiwan, and whom the

material witnesses can contact instead of the Special Agent to arrange for their return to the United States. The government also issued trial subpoenas for the witnesses whom Defendants seek to cross-examine at trial, and each witness stated on the record that he would return for trial.[5] This situation is very different from the circumstances in *United States v. Mann*, 590 F.2d 361 (1st Cir.1978), where the material witness was not told she should return to testify, no expenses for food and board were guaranteed, no trial subpoenas were issued, the depositions were not videotaped and could not capture the witness' demeanor where credibility was at issue, and the government's other efforts to assure the presence of the material witness at trial were clearly "perfunctory." *Id.* at 367 & n. 8.

■ For purposes of the right to confrontation and the rules of evidence, whether the invitations prove successful or the offer is accepted is immaterial; the government's efforts to apprise the material witnesses of these arrangements and actually make such arrangements available to them constitutes "reasonable efforts to assure that the witness will attend trial." *Ruiz*, 973 F.2d at 418. These efforts also demonstrate that the absence of the material witnesses at trial will not be due to the "procurement or wrongdoing" of the government. Fed.R.Evid. 804(a); *see Seijo, supra,* 595 F.2d at 120. Accordingly, the witnesses will be unavailable and their depositions are admissible at trial over both Sixth Amendment confrontation rights objections and evidentiary objections.

### B. *Affidavits*

■ Defendant Fan, relying on *United States v. Lopez-Cervantes,* 918 F.2d 111 (10th Cir.1990) and *United States v. Fuentes-Galindo,* 929 F.2d 1507 (10th Cir. 1991), next argues that the motion of the material witnesses should be denied because they failed to submit affidavits showing exceptional circumstances in support of their respective motions. However, an affidavit is not required in this case. Section 3144 by its terms requires only a party to submit affidavits in order to detain a material witness; it

does not require a material witness to submit an affidavit in support of his release. Rule 15 requires a material witness to make a motion, not submit an affidavit, showing why he should be deposed and released. In both *Lopez-Cervantes* and *Fuentes-Galindo,* the parties provided no reasons for depositions prior to the court's order that depositions be taken. In neither case did the parties file Rule 15 motions or describe the particular circumstances requiring that the material witnesses be deposed. Nevertheless, the court in each case, pursuant to a standing order, permitted depositions to be taken and released the material witnesses. In each case, the Tenth Circuit held that a standing order alone was insufficient under section 3144 and Rule 15 to depose and release material witnesses, and that particular circumstances favoring deposition and release had to be set forth. In neither case, however, did the Tenth Circuit require witnesses, as opposed to the parties, to file affidavits, and certainly no such affidavits are required when the material witnesses file Rule 15 motions and state the reasons for each witness' request to be deposed.

Accordingly, neither Rule 15 nor section 3144 requires that material witnesses file affidavits giving reasons for their release.

## II. COMPULSORY PROCESS

■ The Sixth Amendment states in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

The seminal case concerning compulsory process under the Sixth Amendment is *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (Warren, C.J.), which described the basic purpose of the right to compulsory process in the following way: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide

---

5. The Court presumes that if the Defendants were released and permitted to return to Taiwan, they would be advanced funds by the government to get to the appropriate airport in Taiwan.

where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Id.* at 19, 87 S.Ct. at 1923.

In short, the right to compulsory process offers a means by which defense witnesses are heard and marks a right to have the testimony of defense witnesses entered into evidence for the jury on a footing equal to the testimony of prosecution witnesses. The Sixth Amendment contemplates a trial before a jury in which the defendant has a right to confront adverse witnesses and a right to "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

Defendants seek to retain all four witnesses, claiming that certain parts of the witnesses' testimony support defenses which the defendants wish to assert at trial, and that their constitutional right to compulsory process will be violated if the witnesses are released and allowed to move outside the court's subpoena power before they provide their favorable testimony at trial. The Court has little insight as to the extent or nature of the government's proof in this case and so cannot ascertain whether the defendants are grasping at straws or will, as they claim, be deprived of material evidence. The Court is unable to determine the extent, if any, to which the testimony of the material witnesses is favorable and material to the government's case. Only the Defendants have indicated the importance of the witnesses' testimony to their defense. In the confrontation clause cases, cited by the parties and witnesses, where material witnesses were appropriately released, the witnesses favored the government's case-in-chief; thus the court's decision to release the witnesses in

those cases potentially harmed only the government's case. Here, however, releasing the witnesses would seem to disadvantage Defendants, who are protected by the Sixth Amendment. Placing the Defendants at such a disadvantage risks triggering a "failure of justice" under section 3144, and under those circumstances section 3144 mandates the "further detention" of the witnesses. 18 U.S.C. § 3144.

The Court is mindful of the distance between Taiwan and the United States, the inconvenience that attendance at trial in New York would cause a witness, and the pressures which the witnesses are apt to suffer to remain in Taiwan and disregard their promises to return for trial. If these witnesses, particularly Chang and Tsay, do not return for trial, the defendants could well be deprived of their right to compulsory process. Because the videotaped deposition testimony has been obtained before trial, it may not necessarily cover significant aspects of the case as it develops during trial. Specifically, the testimony of the material witnesses may rebut the in-court testimony of the government witnesses and, therefore, a fair trial, which the Sixth Amendment is meant to ensure, may prove impossible without the witnesses' live in-court testimony.[6] *See Washington v. Texas*, 388 U.S. at 17–18, 87 S.Ct. at 1922 (Sixth Amendment right to compulsory process is fundamental and essential to fair trial).

In sum, using the depositions in lieu of live testimony violates the defendants' right to compulsory process. Because the defendants make the claim that Chang is necessary to their defense[7] and that the remaining three material witnesses corroborate his testimony, and because the Court cannot at this junc-

---

**6.** For example, Defendants claim that "[i]f ... the government calls passengers to testify as to statements allegedly made to or by the crew members about 'smuggling,' the crew members must be available to the defense to testify in response." Bernstein Letter, Jan. 6, 1993, at 3.

**7.** As already noted, in addition to providing certain testimony arguably favorable to the defense, Chang made inconsistent statements to the federal agent and at his deposition concerning the burning of a potentially incriminating note. On the last day of Chang's deposition, the govern-

ment stated that it would seek to introduce at trial Chang's prior inconsistent statement. The depositions do not contain Chang's explanation, if any, of the inconsistency. Nor, on cross examination of Chang, did the defendants have an opportunity to question him concerning the inconsistency. Defendants have shown that Chang alone can provide testimony at trial that explains the alleged destruction of incriminatory evidence. That testimony will not be available on the videotape of the depositions.

ture judge the validity of the claimed defense, the defendants' motion is granted. No court has held that videotaped depositions are the equivalent of live testimony. Depriving the Defendants of live witnesses by virtue of the Court's invocation of 18 U.S.C. § 3144 under these circumstances deprives them of their right to call witnesses favorable to their defense before a jury as envisioned by the Sixth Amendment right to compulsory process.

The Court's calendar allows for an immediate trial. All counsel are to attend a pretrial conference on January 25, 1993 at 9:00 a.m. in courtroom 302 to object to a trial date of February 3, 1993, hereby set subject to objections, and determine appropriate terms of conditional release, if any, of the material witnesses pending trial that ensure their availability at trial.

IT IS SO ORDERED.