COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


DANVILLE REGIONAL MEDICAL CENTER
  (now known as DANVILLE FOUNDATION
  HOUSE), DANVILLE REGIONAL HEALTH
  SYSTEM, DONNA J. DIX, R.N.,
  SUSAN ST. LAWRENCE, R.N. AND
  MARIANNA WILMOTH, R.N.                          MEMORANDUM OPINION[*] BY
                                                  JUDGE WILLIAM G. PETTY
v.      Record No. 2862-08-2                      AUGUST 18, 2009


VIRGINIA BIRTH-RELATED NEUROLOGICAL
  INJURY COMPENSATION PROGRAM AND
  CAITLIN E. WRIGHT, INFANT


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Daniel M. Kincheloe (N. Beth Dorsey; Paul T. Walkinshaw;
            Hancock, Daniel, Johnson & Nagle, on briefs), for appellants.

            Carla R. Collins, Assistant Attorney General (William C. Mims,
            Attorney General; Francis S. Ferguson, Deputy Attorney General,
            on brief), for appellee Virginia Birth-Related Neurological Injury
            Compensation Fund.

            James R. McGarry (Young, Haskins, Mann, Gregory, McGarry &
            Wall, on brief), for appellee Caitlin E. Wright, Infant.


        Appellants, a hospital and employee nurses (the "healthcare providers"), appeal the

Workers' Compensation Commission's (the "commission") decision denying the admission of

Caitlin Wright into the Virginia Birth-Related Neurological Injury Compensation Program (the

"program.")  The healthcare providers argue that the commission should have applied a missing

evidence inference that a fetal heart monitor removed one hour before birth would have shown

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

continuing fetal distress and that this inference would have changed the commission's decision to deny Caitlin's admission into the program. They also contend that the commission erred by failing to consider one of their causation theories. For the reasons that follow, we affirm the commission's decision.

I.

A. Facts

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. On appeal, we view those facts and incidents in the "light most favorable" to the prevailing parties below, in this case Caitlin and the program, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003), and we grant to those parties all fair inferences flowing therefrom. Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

Caitlin Wright was born at Danville Regional Medical Center by cesarean section performed by Dr. Randolph Neal. Caitlin's mother had certain medical conditions that complicated her pregnancy. On the delivery day, Caitlin's mother complained to Dr. Neal of decreased fetal movement. Based on "non-reassuring" test results, Dr. Neal admitted Caitlin's mother to induce birth. Dr. Neal applied an external fetal monitor upon her admission. The fetal monitor readings showed signs of fetal distress, so Dr. Neal decided to proceed with a cesarean section. Before the cesarean section, someone removed the fetal heart monitor. About one hour later, Dr. Neal completed the cesarean section and delivered Caitlin.

Despite some minor signs of fetal distress just after delivery, Dr. Neal indicated in his notes that the mother and the infant were "doing well" shortly thereafter. Early the next day, however, Caitlin exhibited several signs of prolonged hypoglycemia. After her discharge,

Caitlin suffered several seizures and showed other signs of brain injury. Caitlin's mother brought Caitlin back to the hospital, and the hospital transferred her to Duke Medical Center for further treatment. Caitlin now suffers from significant permanent neurological deficits that the parties do not dispute.

Caitlin, through her mother and next friend, brought a medical malpractice suit in the Circuit Court of the City of Danville. Caitlin alleged that the healthcare providers failed to properly treat her hypoglycemia several hours after birth. The healthcare providers removed the action to the commission, pursuant to Code § 8.01-273.1, in order to determine Caitlin's eligibility for benefits under the Virginia Birth-Related Neurological Injury Compensation Act, Code §§ 38.2-5000 to 38.2-5021 (the "Act").

### B. Commission Holding

The parties did not dispute that Dr. Neal was a participating physician at the time of Caitlin's delivery or that Danville Regional Medical Center was a participating hospital. The parties also did not dispute that the extent of Caitlin's injury satisfied the requirements of the Act. Both before the commission and on appeal, however, the parties disagree on the cause of Caitlin's injury.

A deputy commissioner first reviewed Caitlin's eligibility for admission to the program. He considered the opinions of several expert physicians regarding the cause of Caitlin's injury. Caitlin's treating physicians at Duke Medical Center described in various medical reports that post-delivery hypoglycemia caused her brain injury. Dr. Joshua Attridge, testifying as an expert witness, also concluded that oxygen deprivation alone could not account for Caitlin's injury, and instead opined that her injury stemmed from her untreated hypoglycemia. A medical review

- 3 -

panel also concluded that there was insufficient evidence to find that oxygen deprivation caused Caitlin's injury.[1]

The deputy commissioner determined that the healthcare providers failed to prove "by a preponderance of the medical evidence that the infant sustained a birth-related neurological injury caused by oxygen deprivation." The deputy concluded that hypoglycemia caused the injury to the infant, relying primarily on Dr. Attridge's testimony. The deputy believed that Dr. Attridge's medical opinion was most consistent with the factual circumstances, because it fully accounted for all of those circumstances and explained them to a reasonable degree of medical certainty. Hence, he ruled that Caitlin did not qualify for benefits under the Act.

The healthcare providers appealed the deputy's decision to the full commission. The full commission affirmed the deputy commissioner, again emphasizing Dr. Attridge's testimony. The full commission also noted that the deputy commissioner had implicitly denied the request to adopt the missing evidence inference that the healthcare providers sought, and it agreed with that decision. Finally, it ruled that the healthcare providers were not entitled to the statutory presumption under Code § 38.2-5008(A)(1)(a) because they had failed to show by a preponderance of the evidence that oxygen deprivation caused Caitlin's statutory injury. This appeal followed.

## II.

### A. Standard of Review

On appeal, we must uphold the factual findings of the commission when credible evidence supports those findings. City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008) (citing Code § 65.2-706). "'Questions raised by conflicting medical

---

[1] The medical review panel took part in the proceedings in accordance with Code § 38.2-5008(B).

opinions must be decided by the commission. . . . The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding.'" Wolfe v. Virginia Birth-Related Neuro. Injury Comp. Pgm., 40 Va. App. 565, 580, 580 S.E.2d 467, 474 (2003) (internal citations omitted) (quoting Virginia Birth-Related Neuro. Injury Comp. Pgm. v. Young, 34 Va. App. 306, 318, 541 S.E.2d 298, 304 (2001)).  "'Unlike questions of fact,' however, 'we review questions of law *de novo.*'"  NiSource, Inc. v. Thomas, 53 Va. App. 692, 711, 674 S.E.2d 581, 591 (2009) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (en banc)).  Finally, under the doctrine of harmless error, we will affirm the commission's decision if it made an error that could not have affected its decision.  Virginia Ret. Sys. v. Cirillo, 54 Va. App. 193, 202, 676 S.E.2d 368, 373 (2009).

### B.  Missing Evidence Inference

The healthcare providers contend that the commission committed a reversible error by failing to apply a missing evidence inference against the program.[2]  They argue that the application of the missing evidence inference would have changed the commission's decision to deny Caitlin's admission into the program.  We disagree.

In Wolfe, we held that where a physician negligently or intentionally failed to preserve evidence that could affect an infant's admission into the program, the commission may apply a missing evidence inference favorable to the infant.  Wolfe, 40 Va. App. at 580-86, 580 S.E.2d at 475-77.  In that case, the delivering physician failed to preserve the infant's umbilical cord blood just after delivery, and this failure may have amounted to negligence.  Id. at 572-77, 580 S.E.2d at 471-73.  We concluded that the commission could apply a missing evidence inference favorable to the infant if it found that the delivering physician negligently or intentionally

---

[2] This inference is often referred to as the spoliation of evidence inference.

destroyed the umbilical cord blood, and the application of that inference *could change* the commission's decision to admit the infant into the program. Id. at 583-85, 580 S.E.2d at 476-77.

Assuming without deciding that the missing evidence inference should apply to this case, the commission's failure to apply the inference would amount to nothing more than harmless error. See Cirillo, 54 Va. App. at 202, 676 S.E.2d at 373. As the healthcare providers conceded at oral argument, the most favorable inference to which they would be entitled is that fetal distress continued from the time the monitor was removed until Caitlin's birth. However, the commission accepted the credible testimony of Dr. Attridge, who testified that prolonged hypoglycemia several hours after birth caused her injury. Dr. Attridge acknowledged the signs of fetal distress in the record, but concluded that they did not establish oxygen deprivation that accounted for Caitlin's statutorily defined brain injury. Hence, unlike the inference the infant sought in Wolfe, the inference that the healthcare providers seek would not add anything new to the evidence presented to the commission or change the conclusion of the expert that supported its conclusion. Further, we will not review conflicting medical evidence on appeal, so long as the commission had credible evidence to support its decision. Therefore, we hold that even if the commission had adopted the inference, it would not have changed its decision that Caitlin did not suffer a birth-related neurological injury.

## C. Causation

The healthcare providers also argue that the commission failed to consider one of its causation theories. They propose that even if Caitlin's hypoglycemia caused her injury, oxygen deprivation caused the hypoglycemia. Under this theory, oxygen deprivation was the underlying cause of Caitlin's injury. Therefore, the healthcare providers reason that the commission should have granted them the presumption set forth in Code § 38.2-5008(A)(1)(a). We conclude that

the commission properly considered and rejected the healthcare providers' causation theory when it determined that hypoglycemia, rather than oxygen deprivation, caused Caitlin's injury.

For an infant to receive benefits under the program, there must be (1) oxygen deprivation during or just after labor, (2) a statutory brain injury, and (3) a causal connection between the oxygen deprivation and the statutory brain injury. Code § 38.2-5001. However, a party seeking the presumption set forth in Code § 38.2-5008(A)(1)(a) must merely show (1) oxygen deprivation, (2) a statutory brain injury, and (3) a causal connection between the oxygen deprivation and the statutory brain injury. Kidder v. Virginia Birth-Related Neuro. Injury Comp. Pgm., 37 Va. App. 764, 777-78, 560 S.E.2d 907, 913 (2002) (citing Code § 38.2-5008(A)(1)(a)). Hence, the presumption helps an infant gain access to the program by dispensing with the burden to show *when* the oxygen deprivation occurred. However, the party still has the burden to demonstrate that oxygen deprivation caused the infant to sustain permanent motor disability and (i) developmental disability or (ii) cognitive disability. Id. "'[T]he actual determination of causation . . . is a factual finding . . . .'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 576, 612 S.E.2d 738, 743 (2005) (quoting Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)).

There is credible evidence to support the commission's factual finding that the healthcare providers failed to prove that oxygen deprivation caused Caitlin's statutory brain injury. The commission primarily relied on the credible testimony of Dr. Attridge, along with Caitlin's treating physicians from Duke Medical Center and Dr. Brunberg. Dr. Attridge concluded that although Caitlin probably suffered from chronic hypoxemia while in her mother's womb, Caitlin would not "be in her position today if she had just suffered from chronic hypoxemia."
Dr. Attridge emphasized that only hypoglycemia could account for the full extent of Caitlin's injury. In his opinion, "this hypoglycemia was not due to any acute hypoxemia or other event

related to labor," which directly contradicted the healthcare providers' experts. The medical reports of Caitlin's treating physicians at Duke Medical Center also indicate that hypoglycemia caused her statutory brain injury. Finally, Dr. Brunberg reviewed Caitlin's brain scans and concluded that "severe neonatal hypoglycemia" caused Caitlin's injury, not oxygen deprivation.

Accordingly, we hold that credible evidence supported the commission's decision that the healthcare providers failed to prove a causal connection between any purported oxygen deprivation and Caitlin's statutory brain injury. Therefore, we will not reverse the commission's decision with respect to this factual finding.

III.

For the foregoing reasons, we conclude that the commission's refusal to apply the missing evidence inference had no impact on its decision and that the commission properly relied on credible evidence when it rejected the healthcare providers' causation theory. Therefore, we affirm the commission's decision.

Affirmed.