**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Humberto RIVERA,
Defendant–Appellant.**

No. 87–5681.

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1988.

Decided Oct. 24, 1988.

the defendant's conduct and the alien's violation of the law; and in excluding evidence and forbidding argument relating to the eligibility of the aliens for amnesty. Finding no merit in these exceptions, we affirm.

Trevor Washington Swett, III (Geoffrey Judd Vitt, Caplin & Drysdale, Chartered, Washington, D.C., on brief), for defendant-appellant.

Paul G. Cassell, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., Keith A. Logan, Sp. Asst. U.S. Atty., William G. Otis, Asst. U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

Humberto Rivera was convicted of nine counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B).[1] The appellant claims error by the trial court in the admission of the deposition testimony of certain alien witnesses, who had been deported prior to trial; in failing to charge the jury that there must be proof of a direct and substantial relationship between

## I

Appellant was indicted following an investigation by the U.S. Immigration and Naturalization Service into the transportation of illegal aliens into the northern part of Virginia from other states. At a work site, a number of illegal aliens were arrested, and shortly thereafter appellant and three others were charged with illegal transportation of illegal aliens.

Following the arrest of Rivera and the aliens, Rivera posted bond and was released from custody. The illegal aliens could not arrange the posting of a bond and they were retained in custody for a period of approximately three weeks. An attorney was appointed for these aliens, and shortly thereafter he made a motion to have their testimony taken by deposition pursuant to the Material Witness Statute, 18 U.S.C. § 3144[2] and Federal Rule of Criminal Procedure 15[3]. This motion also

---

**1.** 8 U.S.C. § 1324(a)(1)(B) Bringing in and harboring certain aliens.
(a) Criminal Penalties.
(1) Any person who—
(B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or move or attempts to transport or moves such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;
shall be fined in accordance with Title 18, imprisoned not more than five years, or both, for each alien in respect to whom any violation of this subsection occurs.

**2.** Title 18, § 3144 Release or Detention of a material witness.
If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of § 3142 of this Title. No material witness may be detained because of inability to comply with any conditions of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a

material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

**3.** Rule 15 of Federal Rules of Criminal Procedure.
Depositions.
(a) When Taken. Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording or other material not privileged, be produced at the same time and place. If a witness is detained pursuant to § 3144 of title 18, United States Code, the court on written notice of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness.
Rule 15(e):
(e) Use. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness

asked that the illegal aliens be released from custody and allowed to leave the country. At the hearing on the motion the United States Attorney supported the taking of the depositions and the attorney for the appellant opposed. The trial judge, in granting the motion, made the following finding:

> Exceptional circumstances have been shown in that the witnesses are being incarcerated awaiting a trial. And humanitarian considerations alone demand that something be done to release them from incarceration, when their only purpose for being incarcerated is to be witnesses. And whether they voluntarily flee after their depositions have been taken or whether the INS deports them back to their countries of origin is beside the point.

Pursuant to the court's order, the depositions were taken and the appellant and his attorney were present at each deposition and participated therein, not only by cross-examining the witnesses, but by the attorney making certain comments into the record as to the demeanor and condition of the witness, i.e., "Let the record reflect that the witness is having a great deal of difficulty right now. He is very ill." "Also let the record reflect that the witness has been disturbed and is very shaky, he is crying."

After the depositions were taken the deposed aliens elected to voluntarily leave the country, rather than face normal deportation proceedings, and they were returned to Mexico.

At trial one of these depositions was read in its entirety, and since the other deposition testimony was quite similar, only selected portions of the direct and cross-examination of two other depositions were read. The evidence showed that Rivera leased a small apartment and that seven aliens lived with him in the apartment. Appellant took the witness stand and admitted

that he had transported a number of aliens to work in Virginia and that he had also transported them from Ohio to Virginia. Initially, he denied that he knew that any of them were illegal aliens, but he finally admitted that he was aware, at the time of his arrest, that Nicolas Guerrero–Avila was an illegal alien. He also admitted that he had cashed checks for the aliens because they had no personal identification.

Upon conviction Rivera was sentenced to three years imprisonment on each count, with the sentences to run concurrently. However the sentences were suspended upon service of the short period of time that Rivera had been incarcerated, and he was placed on probation.

## II

Appellant claims that the use of the depositions violated his Sixth Amendment right to be confronted by the witnesses against him. The thrust of this claim is that the depositions cannot be used until the trial court finds that the witnesses are "unavailable to testify". He relies on *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Barber and Woods were jointly charged with armed robbery and at a preliminary hearing, Woods waived his privilege against self-incrimination and gave testimony incriminating Barber. Barber's attorney did not cross-examine Woods. Seven months later Barber was tried on the robbery charge in Oklahoma. At this time Woods was in a federal prison in Texas, and the State of Oklahoma made no effort to obtain Woods' presence at trial, but over petitioner's objection, introduced the transcript of Woods' preliminary hearing testimony, and claimed that Woods was unavailable to testify. Speaking through Justice Marshall, the Court noted that the State had made no effort to obtain the presence of Woods and it had assumed that the mere absence of the wit-

is unavailable as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence, or the witness gives testimony at the trial or hearing inconsistent with that witness' deposition. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require the offering of all of it which is relevant to the part offered and any party may offer other parts.

ness from the jurisdiction of the court was sufficient to show impossibility to compel his attendance. The court rejected this assumption of unavailability and concluded "... a witness is not "unavailable" for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." 390 U.S. at 724–25, 88 S.Ct. at 1321–22.

*Barber* was discussed and distinguished by the court in *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). In *Mancusi* a Tennessee prosecutor introduced a transcript of direct and cross-examination of the witness who had left the United States and taken permanent residence in Sweden. Prior to trial the prosecutor had attempted to subpoena the witness at his last known address. The Court found that the witness was unavailable because the State of Tennessee was powerless to compel his attendance and the court pointed out that in *Barber* the state had not met its obligation to make a good-faith effort to obtain the presence of a witness and had merely shown that he was beyond the boundaries of the prosecuting state, but in *Mancusi* the witness was out of the country and beyond the compulsory processes of the court.

The appellant argues that the deported witnesses are not "unavailable," because the United States by its own efforts made them unavailable by deporting them to Mexico. Actually, the witnesses left this country voluntarily after they were deposed and released from custody. The depositions resulted from a motion of the attorney representing the incarcerated alien witnesses. The appellant was heard on the motion and the judge made the necessary findings under Federal Rule of Criminal Procedure 15 and 18 U.S.C. § 3144. At the time the depositions were taken the witnesses could not make bail. If they were released from custody, they had no place to stay, and there was no way to ensure that they would be present at trial two months later. The appellant and his attorney were present at the taking of the depositions, the attorney cross-examined the witnesses, and he was allowed to make his personal obser-

vations of the witnesses a part of the record.

If the court had denied the motion for depositions, these alien material witnesses would have been incarcerated for more than three months, even though they were neither indicted nor convicted of a crime. The appellant was both indicted and convicted on nine counts, and he spent less time incarcerated than did these witnesses, who were deposed and deported.

 We find that the trial court followed both the letter and spirit of 18 U.S.C. § 3144 and Rule 15, and its finding of Exceptional Circumstances was not clearly erroneous. On the present facts the illegal alien witnesses, who had been deposed and had left the country rather than await deportation, were unavailable within the meaning of Federal Rule of Criminal Procedure 15(e). The introduction of these depositions at appellant's trial did not deny him the right of confrontation.

 The United States Attorney had a dual responsibility in this case. It was his duty to consider the rights of the witnesses, as well as the rights of the appellant, and to also comply with his duty of deporting the illegal aliens without undue delay. This problem was recognized by the Court in *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), in which the defendant was charged with transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(2). Valenzuela–Bernal had been arrested shortly after he crossed the Mexican–United States border with five illegal aliens lying down in the back of his automobile. After arrest the defendant and the passengers were interviewed. Three of the passengers admitted they were illegally in the country and identified the defendant as the driver of the car. The United States Attorney concluded that the three passengers possessed no evidence material to the prosecution or the defense and two of the passengers were deported to Mexico. Following conviction Valenzuela–Bernal contended that he was denied his Fifth Amendment right to due process and Sixth Amendment right of

compulsory process for obtaining favorable witnesses by the deportation of the two witnesses. The Court pointed out that the Executive Branch is charged with the responsibility of faithfully executing laws and stated:

> ... [t]he Government is charged with a dual responsibility when confronted with incidents such as that which resulted in the apprehension of respondent. One or more of the persons in the car may have violated the criminal laws enacted by Congress; but some or all of the persons in the car may also be subject to deportation as provided by Congress. The Government may, therefore, find itself confronted with the obligation of prosecuting persons in the position of respondent on criminal charges, and at the same time obligated to deport other persons involved in the event in order to carry out the immigration policies that Congress has enacted.

The power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the political branches of the Federal Government. *See Mathews v. Diaz,* 426 U.S. 67, 81 [96 S.Ct. 1883, 1892, 48 L.Ed.2d 478] (1976). "The Court without exception has sustained Congress' 'plenary power to make rules for the admission of aliens.'" *Kleindienst v. Mandel,* 408 U.S. 753, 766 [92 S.Ct. 2576, 2583, 33 L.Ed.2d 683] (1972) (quoting *Boutilier v. INS,* 387 U.S. 118, 123 [87 S.Ct. 1563, 1566, 18 L.Ed.2d 661] (1967)). In executing this power, Congress has adopted a policy of apprehending illegal aliens at or near the border and deporting them promptly. Border Patrol agents are authorized by statute to make warrantless arrests of aliens suspected of 'attempting to enter the United States in violation of ... law,' 8 U.S.C. § 1357(a)(2), and are directed to examine them without 'unnecessary delay' to determine 'there is prima facie evidence establishing' their attempted illegal entry. 8 C.F.R. § 287.3 (1982). Aliens against whom such evidence exist may be granted immediate voluntary departure from the country. *See* 8 U.S.C.

§ 1252(b); 8 C.F.R. § 242.5(a)(2)(i) (1982). Thus, Congress has determined that prompt deportation, such as occurred in this case, constitutes most effective effort for curbing the enormous flow of illegal aliens across our southern border. *Id.* at 864, 102 S.Ct. at 3444–45.

The court also recognized the substantial financial and physical burdens upon the government resulting from any effort to detain alien witnesses and that it was impossible to prosecute many cases involving transportation and harboring of illegal aliens because of the witness problem.

In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), it was held that to establish a Sixth Amendment violation of the right to compulsory process required more than the mere absence of testimony, and that the criminal defendant must show that he was denied compulsory process for obtaining witnesses in his favor. In the present case Rivera has made no showing that he has been denied testimony favorable to him, nor has he shown that the deposition testimony was any different from what the live testimony of the witnesses would have been.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), it was determined that "the lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *Id.* at 74, 100 S.Ct. at 2543. We agree with the district judge that the actions of the United States Attorney in this case were reasonable. The motion to depose was made by the attorney for the witnesses and the U.S. Attorney supported the motion as being proper under the statute and the Federal Rules of Criminal Procedure as exceptional circumstances. Proper notice was given to appellant and his attorney was heard in opposition to the witnesses' motion to have their depositions taken. Appellant and his attorney were present and participated fully in the taking of the depositions. The requirements and procedures of 18 U.S.C. § 3144 and Federal Rule of Criminal Procedure 15 were duly met and followed. The witnesses were entitled to release and their testimony could be and was adequately se-

cured by deposition. The appellant was not prejudiced by the use of the depositions and the absence of the three illegal aliens.

The suggestions made by the appellant as to how the presence of the illegal aliens could have been assured at trial are all unrealistic and totally lacking in merit.

Other circuits have faced the problem of deposing illegal aliens and using deposition testimony in criminal trials. In *United States v. Terrazas–Montano,* 747 F.2d 467 (8th Cir.1984), the court found, on facts very similar to those now before us, that exceptional circumstances did exist to justify the use of the depositions of illegal aliens, who were deported prior to trial. The court found that they were "unavailable", and to require the government to show that it was unable to procure their attendance at trial would be a useless act. The court also determined that "the trial-type setting of the depositions produced sufficient 'indicia of reliability' to satisfy the Sixth Amendment." *Id.* at 469.

In *United States v. Seijo,* 595 F.2d 116 (2d Cir.1979), the court observed that when Federal Rule of Criminal Procedure 15 was originally adopted it only allowed criminal defendants to take depositions, but that the rule was amended in 1975 to permit the government to take depositions for use in criminal cases and conditioned admissibility of the deposition upon "unavailability" as defined in Rule 804(a) of the Federal Rules of Evidence. The court further found that Congress intended to expand the potential for the use of depositions by the government in criminal cases.

The appellant cites *United States v. Provencio,* 554 F.2d 361 (9th Cir.1977), which is not relevant because the aliens had not been released and were still available to testify. *United States v. Vasquez–Ramirez,* 629 F.2d 1295 (9th Cir.1980), is not applicable because the Federal Rules of Criminal Procedure were not followed in taking the deposition. Also, *United States v. Guadian–Salazar,* 824 F.2d 344 (5th Cir. 1987), is distinguishable because it involved a standing order issued by the judges of the Western District of Texas which required all alien material witnesses to be deposed and released within sixty days of their detention. The government confessed error primarily because the district court's order did not address the issue of "exceptional circumstances" and that the district judges under the order exercised no discretion. The circuit court reversed, but found that many of the issues raised by the standing order had not been properly briefed or addressed. We find no precedential value to this opinion.

## III

We find no merit to the appellant's claim that the judge erred in his instruction under 8 U.S.C. § 1324(a)(1)(B). Appellant contends that the judge did not give the charge that he had requested on the "substantial relationship between the transportation of the alien and the furtherance of the alien's unlawful presence in the United States." Although the trial judge did not use the exact language requested, he clearly and completely covered this element in his instructions and this exception is but a matter of semantics and not substance.

## IV

█ The final exception is also without merit. Appellant claims that he was prevented from eliciting evidence and making arguments relating to the amnesty program for undocumented aliens. He asserts that he should have been able to argue that the aliens were eligible for amnesty and therefore they were not in the United States illegally. The amnesty program was created under the Immigration Reform and Control Act on November 6, 1986. Pub.L. 99–603, 100 Stat. 3359. The trial judge was correct in finding that it was irrelevant to the present case. The present prosecution is for violation of 8 U.S.C. § 1324(a)(1)(B) and it is necessary to show that the alien, who is transported by the defendant, "has come to, entered, or remains in the United States in violation of the law...." Amnesty is irrelevant until it is granted. The record reflects that the various aliens, who were transported by defendant, had come to and entered this country illegally. There was no evidence

or proffer that any of them had applied for amnesty. If at some later time they may have been eligible to apply for amnesty, this does not change their illegal status at the time of entry and at the time of the illegal transportation. In his testimony Rivera did not testify that he thought any of the aliens were entitled to amnesty. The trial judge was correct in preventing the non-issue of amnesty from coming in and adding confusion to the case.

AFFIRMED.