COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Haley and Petty
Argued at Alexandria, Virginia


THALES MORGAN, JR.

                                                            OPINION BY
v.        Record No. 1055-06-4                    JUDGE JAMES W. HALEY, JR.
                                                          SEPTEMBER 18, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

Barry A. Zweig (Zweig & Associates, on briefs), for appellant.

Alice T. Armstrong, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


        The narrow issue here for resolution is whether the trial court properly concluded that the

Commonwealth exercised reasonable diligence to procure the attendance at trial of its deported

witness, as a predicate supporting the trial court's additional determination that that witness was

unavailable for trial, thus permitting the admission of the earlier transcribed testimony of that

witness, in accord with the principles of Crawford v. Washington, 541 U.S. 36 (2004).  We

affirm.

STATEMENT OF FACTS

        Thales Morgan, Jr. ("appellant") was convicted by a jury of robbing Zara Zafar.  Zafar

had testified at a preliminary hearing on June 15, 2005, and at a motion to suppress her in-court

and out-of-court identifications of appellant heard in the trial court on October 6, 2005.  She was

subjected to cross-examination at both proceedings, and each was transcribed.  Appellant waived

trial by jury, and the matter was set for October 11, 2005.

Zafar had been summoned by the Commonwealth and was present on October 11. On that date, however, appellant asserted his right to trial by jury, necessitating a continuance to January 9, 2006. On October 11, the Commonwealth caused Zafar to be personally served with a witness subpoena for January 9, 2006, and, further, had her personally served with a second subpoena, executed on October 26, 2005, again for her appearance on January 9. Zafar did not appear on January 9. She was in Pakistan, having been deported by action of the United States government. The trial court conducted a hearing with respect to her unavailability on January 6, 2006.[1]

Mumtaz Wani, an immigration attorney, began representing Zafar in 2004, at which time her visa to remain in the United States had already expired and deportation proceedings had been initiated. That year, despite his efforts, the Immigration Court ordered her deported. Mr. Wani appealed that decision to the Board of Immigration Appeals, located in Falls Church, Virginia. The appeal was denied on November 2, 2005. A copy of the Board's decision was introduced as Commonwealth's Exhibit 2 ("We find . . . that [Zafar] has failed to present a *prima facie* case for . . . withholding of deportation . . . ."). Mr. Wani testified she was deported "by order of the U.S. [g]overnment." He acknowledged receipt of letters from the Commonwealth's Attorney seeking "extension of her visa until the conclusion of the trial." He talked with Zafar from her home in Pakistan in December 2005. There is no question that Zafar remained in Pakistan on January 9, 2006. On cross-examination, Mr. Wani was asked if he knew "what a Significant Public Benefit Parole is pursuant to Section 212D5 of the Immigration and Nationality Act?" He replied, "I've not heard of that."

---

[1] Both the Commonwealth and counsel for appellant had appeared the preceding Friday, January 6, 2006, and advised the trial court that Zafar would not be present on Monday, January 9, 2006.

Introduced as Commonwealth's Exhibit 1 was a letter dated October 17, 2005, from the Office of the Commonwealth's Attorney to the U.S. Board of Immigration Appeals in Falls Church. Therein the Commonwealth advised that it understood Zafar was "in the midst of a pending appeal of her immigration status." The Commonwealth also advised that she had been personally served with subpoenas for her appearance on January 9, 2006, that she was the victim of a robbery and a "crucial witness" at trial, and offered to supply "any further information regarding the matter." The Commonwealth also enclosed copies of both subpoenas. The Board neither acknowledged receipt of the letter nor responded to the same.

Thomas Walsh, one of the defense attorneys for the sniper Lee Boyd Malvo, testified that he had been able to obtain the presence of Malvo's mother and sister from Jamaica and Antigua by use of the "Significant Public Benefit Parole" procedure referred to above. Such a potential witness must have or obtain "a passport from their country and a visa from the United States Embassy in that country." If such a witness does not have a visa, "the Department of Homeland Security gets involved." On cross-examination, Mr. Walsh acknowledged he did not know whether it would be harder to get an expedited visa from a country such as Pakistan as compared with Jamaica or Antigua and that he had only used the procedure once. Unlike the instant case, the witnesses sought in the Malvo trial were not within the United States when Mr. Walsh requested their presence, and Mr. Walsh apparently had no contact with immigration authorities within the United States.

At the conclusion of the hearing, the trial court stated, "The only question I have is did they take reasonable steps, a good faith effort, to have her appear today?[2] I find they did." With

_____

[2] At the pretrial hearing on January 9, 2006, the following exchange occurred between the trial court and appellant's counsel:

that finding the trial court concluded Zafar was unavailable and admitted into evidence, by a reading of the same to the jury, her transcribed preliminary testimony of June 15, 2005 and her transcribed testimony of the circuit court hearing on her identification of appellant on October 6, 2005.

STANDARD OF REVIEW

In Sapp v. Commonwealth, 263 Va. 415, 559 S.E.2d 645 (2002), the Supreme Court of Virginia stated, "We review the trial court's determination of 'unavailability' of a witness for the purpose of establishing admissibility of prior sworn testimony utilizing an abuse of discretion standard." Id. at 423, 559 S.E.2d at 649 (citing Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 665 (1954)). See also Schneider v. Commonwealth, 47 Va. App. 609, 613-14, 625 S.E.2d 688, 690 (2006), cert. denied 127 S. Ct. 2096 (2007); Rahnema v. Rahnema, 47 Va. App. 645, 661, 626 S.E.2d 448, 456 (2006); Doan v. Commonwealth, 15 Va. App. 87, 102, 422 S.E.2d 398, 406 (1992).

ANALYSIS

Burden of Proof and Substantive Law

Our analysis begins with Crawford, 541 U.S. 36. There the Supreme Court set forth two requirements for the admission of "testimonial" hearsay evidence.[3] The Court stated, "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law

THE COURT:     I don't know of any rule that mandates [the Commonwealth] to use that [Significant Benefit Parole Visa] process, do you?

MR. ZWEIG:     Your Honor, the question is good faith.

[3] There is no question but that the transcripts of the preliminary hearing and the circuit court identification motion hearing are "testimonial." As Crawford explained, "Whatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial." 541 U.S. at 68.

- 4 -

required: unavailability and a prior opportunity for cross-examination." Id. at 68. The common law of Virginia comported with these requirements prior to the decision in Crawford. See Longshore v. Commonwealth, 260 Va. 3, 3-4, 530 S.E.2d 146, 146 (2000).

Unavailability

This Court has previously established that "[t]he party offering the testimony bears the burden of establishing the witness' unavailability." Bennett v. Commonwealth, 33 Va. App. 335, 347, 533 S.E.2d 22, 28 (2000) (*en banc*). Further, we recognize that "a witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25 (1968).

Where unavailability is premised upon a witness' absence from trial, the party offering the prior testimony must demonstrate the exercise of due diligence and reasonable efforts to obtain the presence of the witness. In such circumstances, "[d]ue diligence is that amount of prudence 'as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances.'" McDonnough v. Commonwealth, 25 Va. App. 120, 128, 486 S.E.2d 570, 574 (1997) (quoting Black's Law Dictionary 457 (6th ed. 1990)). Further, "[d]ue diligence requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted." Id. at 129, 486 S.E.2d at 574. See also Burton, 195 Va. at 550, 79 S.E.2d at 664 ("[T]he party offering such evidence must show 'to the satisfaction of the court that he could not, by the use of reasonable diligence, have procured the deposition of the absent witness.'" (quoting Wise Terminal Co. v. McCormick, 107 Va. 376, 380, 58 S.E. 584, 586 (1907))); United States v. Lee, 906 F.2d 117, 119 (4th Cir. 1990) ("'The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.'" (quoting United States v. Rivera, 859 F.2d 1204, 1208 (4th Cir. 1988)));

United States v. Taveras, 436 F. Supp. 2d. 493, 509 (E.D.N.Y 2006) ("No precise formulation determines whether the proponent of testimony has made a good faith effort to procure the witness's live testimony.").

This Court requires that "[b]efore admitting a transcript of prior testimony, the court must be satisfied 'that a sufficient reason is shown why the original witness is not produced.'" Doan, 15 Va. App. at 100, 422 S.E.2d at 405 (quoting Gray v. Graham, 231 Va. 1, 5, 114 S.E.2d 153, 155 (1986)). However, there is no "exhaustive list of the circumstances under which a declarant may be deemed 'unavailable.'" Jones v. Commonwealth, 22 Va. App. 46, 51, 467 S.E.2d 841, 843-44 (1996).

Initially, we note that the Commonwealth twice sought and obtained personal service of a witness subpoena for Zafar's appearance at trial on January 9, 2006.[4] Zafar had twice before honored a subpoena – once at the preliminary hearing and again at the circuit court hearing on appellant's motion challenging her identification of him. The Commonwealth, aware of the pending deportation proceedings against Zafar, communicated with her immigration attorney seeking to postpone or extend those proceedings until after trial. In addition, over two months before the scheduled trial date, the Commonwealth wrote to the United States Immigration authorities referencing Zafar's immigration file number. The Commonwealth advised the Board of Zafar's subpoenas, the trial date, and her role as a victim and a crucial witness in that trial. The letter further offered to supply "any further information" necessary to ensure her appearance. No response was ever received.

---

[4] We accordingly find appellant's reliance on Barber, 390 U.S. 719, McDonnough, 25 Va. App. 120, 486 S.E.2d 570, and United States v. Mann, 590 F.2d 361 (1st Cir. 1978), misplaced. In each of these cases, the prosecution failed to request a subpoena for the witness maintained as unavailable.

Moreover, we do not consider the Commonwealth's failure to use the "Significant Public Benefit Parole" procedure employed in the Malvo case as evidence of a lack of good faith on the Commonwealth's part. Zafar's immigration attorney had never heard of it. Additionally, it would be speculative at best to conclude that the United States Embassy in Pakistan would issue a visa for an individual who had been deported just two months before for a visa expiration violation. Finally, we note that the Commonwealth of Virginia has no authority to intervene in deportation proceedings initiated by the United States government. See Rivera, 859 F.2d at 1208 ("'The power to regulate immigration -- an attribute of sovereignty essential to the preservation of any nation -- has been entrusted by the Constitution to the political branches of the Federal Government.'" (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 864 (1982))).

As no Virginia case was discovered dealing with the circumstance of a deported witness, potential guidance is found in federal jurisprudence.[5]

In United States v. Terrazas-Montano, 747 F.2d 467 (8th Cir. 1984), the United States government sought the testimony of witnesses arrested by INS and locally jailed pending deportation proceedings. These witnesses went on a hunger strike for more than ten days, demanding to be returned to Mexico. Upon motion of the government, the witnesses' testimony was videotaped subject to cross-examination, and, again upon the government's motion, the witnesses were released to voluntarily return to Mexico. At trial, defendant objected to use of the videotapes based upon the Confrontation Clause of the United States Constitution. Even though the witnesses were not subpoenaed for trial, the court concluded:

---

[5] The relevant federal jurisprudence flows from Federal Rules of Evidence 804(a) and 804(b). Rule 804(a) defines the term "Unavailability as a witness" as including "situations in which the declarant . . . is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Rule 804(b) states that "[f]ormer testimony . . . given as a witness at another hearing [will be admitted when the declarant is unavailable when] the party against whom the testimony is now offered . . . had an opportunity . . . to develop the testimony by direct, cross, or redirect examination."

> We reject this contention. First, the witnesses had been returned to Mexico and had told the INS representative that they would not return to testify. They were undoubtedly beyond the reach of process of the United States District Court for the District of Nebraska. We think it evident that the witnesses were unavailable, under circumstances which reflect no bad faith on the part of the government.

Id. at 469.

There is no question but that Zafar in Pakistan was "beyond the reach of process" of the Circuit Court of Prince William County, Virginia. See also Burton, 195 Va. at 550, 79 S.E.2d at 664 ("It must be shown . . . that the witness is . . . beyond the jurisdiction of the court . . . .").

In United States v. Eufracio-Torres, 890 F.2d 266 (10th Cir. 1989), cert. denied, 494 U.S. 1008 (1990), seven illegal aliens were ordered to be detained as material witnesses by a United States magistrate, and deposed subject to cross-examination. Before they were released to INS under "administrative detainers," they were "served with subpoenas to appear for trial and given instructions regarding reentry into the United States, travel reimbursement, and appearance fees in connection with the trial. Each witness indicated that he would return to testify at trial." Id. at 268. When they did not return and the government sought to use their depositions, defendant unsuccessfully challenged their use under the Confrontation Clause. In finding these witnesses unavailable, and thus approving the introduction of the depositions, the Court of Appeals wrote:

> The law does not require the government to utilize an absolute means of attempting to assure the appearance of a witness, only a reasonable means. The facts of this case establish the government utilized reasonable means to assure the attendance of the witnesses. The fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith.

Id. at 270.

In Rivera, an attorney for illegal aliens detained in custody pending deportation "made a motion to have their testimony taken by deposition pursuant to the Material Witness Statute, 18 U.S.C. § 3144 and Federal Rule of Criminal Procedure 15 . . . [and] asked that the illegal aliens

be released from custody and allowed to leave the country." 859 F.2d at 1205-06. The United States Attorney joined in the motion, and, despite appellant's objection, it was granted. Appellant's counsel was "present at each deposition and participated therein, not only by cross-examining the witnesses, but by the attorney making certain comments into the record as to the demeanor and condition of the witness." Id. at 1206. The court rejected a Sixth Amendment argument, concluding, "The introduction of these depositions at appellant's trial did not deny him the right of confrontation." Id. at 1207. See also Lee, 906 F.2d at 119.

Due to the myriad circumstances that may arise, we do not here delineate precisely what steps the Commonwealth must take to demonstrate good faith and due diligence in attempting to ensure the presence at trial of a deported witness. Rather, we apply the McDonnough standard of determining due diligence as discussed *supra*. Addressing the circumstances of the instant case, and applying the standard of review enunciated in Sapp, we conclude the trial court did not abuse its discretion in finding that Zafar was unavailable as a witness.

### Opportunity to Cross-Examine

In Longshore, the Virginia Supreme Court reiterated that preliminary hearing testimony of an unavailable witness was admissible provided:

> (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

260 Va. at 3-4, 530 S.E.2d at 146 (citing Shifflett v. Commonwealth, 218 Va. 25, 28, 235 S.E.2d 316, 318 (1977); Fisher v. Commonwealth, 217 Va. 808, 812-13, 232 S.E.2d 798, 801-02 (1977)).

On brief, appellant concedes that these predicates have been met. Yet, he claims appellant's "constitutional right to confrontation was abridged because the jury he requested was unable to observe the witness' demeanor, intonation, ability to recollect the events and her ability to reconcile the inconsistencies of her prior statements under oath." In short, he argues that the Confrontation Clause is necessarily violated if a witness is not physically present and testifying.

Such an argument was raised and rejected in Mattox v. United States, 156 U.S. 237 (1895). Witnesses at a prior trial had died. The Supreme Court stated:

> Both these witnesses were present and were fully examined and cross-examined on the former trial. It is claimed, however, that the constitutional provision that the accused shall "be confronted with the witnesses against him" was infringed, by permitting the testimony of witnesses sworn upon the former trial to be read against him.
>
>          \*      \*      \*      \*      \*      \*      \*
>
> [T]he authority in favor of the admissibility of such testimony, where the defendant was present either at the examination of the deceased witness before a committing magistrate, or upon a former trial of the same case, is overwhelming.
>
>          \*      \*      \*      \*      \*      \*      \*
>
> There is doubtless reason for the saying that the accused should never lose the benefit . . . of that personal presence of the witness before the jury which the law designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

Id. at 240-43. As here applicable, Mattox remains the law. See Douglas v. Alabama, 380 U.S. 415, 418 (1965) ("Our cases construing the [Confrontation C]lause hold that a primary interest

secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation.");[6] Barber, 390 U.S. at 722 ("This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement.").[7]

In Crawford, the Court noted, "[T]he *common law* in 1791 conditioned admissibility of an absent witness's examination on unavailability and a *prior* opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations." 541 U.S. at 54 (emphasis added). The Court also quoted from Mattox as follows: "'The substance of the constitutional protection is preserved to the prisoner in the advantage *he has once had* of seeing the witness face to face, and of subjecting him to the ordeal of cross-examination.'" Id. at 57 (quoting Mattox, 156 U.S. at 244) (emphasis added).

Our conclusion is strengthened by the decision of the United States Supreme Court in Whorton v. Bockting, 127 S. Ct. 1173 (2007). There that Court concluded that while Crawford announced a "new rule," that rule was neither substantive ("it is clear and undisputed that the rule is procedural and not substantive"), nor a "watershed rule of criminal procedure." Id. at 1181. Accordingly Crawford is not applicable retroactively to cases final on direct appeal. As

---

[6] In Douglas, the confession of a codefendant who exercised his Fifth Amendment right was read to a jury. The Supreme Court reversed because of the lack of opportunity for cross-examination, holding further that defendant's objection had not been waived. The Court of Appeals of Alabama had held the defendant's right to confrontation was violated under state law because "'there must be confrontation face to face to allow *viva voce* cross-examination before the jury,'" but determined that right had been waived by a failure to object. 380 U.S. at 418 (quoting Douglas v. State, 163 So. 2d 477, 493, 495 (Ala. Ct. App. 1963)). The Supreme Court of Alabama had denied review. Id. Thus, in Douglas, the United States Supreme Court was offered, and declined, to adopt the interpretation of the Confrontation Clause appellant here asserts.

[7] The conviction was reversed in Barber because no good faith effort was made to produce the witness whose preliminary hearing testimony had been admitted.

that Court explained, a "watershed rule" implicates "'the fundamental fairness and accuracy of the criminal proceeding.'"  Id. (quoting Saffle v. Parks, 494 U.S. 484, 495 (1990)).  As such, its adoption must be necessary to prevent "an impermissibly large risk of an inaccurate conviction."  Id. at 1182.  The Court continued, "The Crawford rule also did not 'alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding.'"  Id. at 1183 (quoting Sawyer v. Smith, 497 U.S. 227, 242 (1990)).  In short, a prior opportunity to cross-examine a witness later unavailable suffices to satisfy the Confrontation Clause.

Finally, we note that if one would interpret the Sixth Amendment Confrontation Clause to require a *viva voce* confrontation in every instance, as appellant maintains, the structural and decision basis of Crawford would have been unnecessary.

Affirmed.