COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Clements
Argued at Richmond, Virginia


ROBERT ANDREW HARRIS

OPINION BY
v.        Record No. 1608-07-2                    JUDGE JEAN HARRISON CLEMENTS
                                                  OCTOBER 28, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

G. Russell Stone, Jr. (Bowen, Champlin, Carr, Foreman &
Rockecharlie, on brief), for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.

Robert Andrew Harris was convicted in a bench trial of attempted robbery, in violation of

Code § 18.2-58 and Code § 18.2-26, use of a firearm in the commission of a felony, in violation

of Code § 18.2-53.1, discharging a firearm in a public place, in violation of Code § 18.2-280, and

possession of a firearm by a juvenile, in violation of Code § 18.2-308.7.  On appeal, Harris

contends the trial court erred in (1) refusing to dismiss the charges against him on the ground he

was not provided an adjudicatory or transfer hearing within the requisite 120-day period set forth

in Code § 16.1-277.1(B) and (2) admitting into evidence the prior testimony of a purportedly

unavailable witness.  Finding no error, we affirm the trial court's judgment and Harris's

convictions.

I.  BACKGROUND

The relevant facts in this case are not in dispute.  On March 3, 2006, Harris, who was 15

years old, was arrested in connection with a robbery pursuant to petitions filed in the juvenile

and domestic relations district court (J&DR court). On April 14, 2006, the Commonwealth filed a motion for notice of transfer hearing pursuant to Code § 16.1-269.1(A) and the transfer hearing was scheduled for June 5, 2006. On June 5, 2006, the Commonwealth requested a continuance and the J&DR court rescheduled the transfer hearing for June 26, 2006. On June 26, 2006, at the Commonwealth's request, the J&DR court continued the transfer hearing to July 14, 2006, after determining the transfer report for Harris had not been prepared or presented to the J&DR court and the Commonwealth's subpoenaed witnesses were not present.

On June 28, 2006, the Commonwealth filed a motion to move the hearing date to within 120 days from the date the petitions were filed, or find good cause in writing to waive the requirement, in order to comply with Code § 16.1-277.1. The Commonwealth sent the motion to defense counsel by facsimile, and the J&DR court set the hearing for June 30, 2006. On June 29, 2006, defense counsel left a message for the Commonwealth noting that she was out of the area and unable to attend the June 30 hearing. At the June 30 hearing, the J&DR court found good cause to waive the 120-day rule but failed to provide the basis for the extension in writing. Neither Harris nor his counsel attended the hearing.

Subsequently, Harris filed a motion to dismiss claiming the J&DR court's decision to waive the 120-day rule violated his Sixth Amendment rights and the time requirements of Code § 16.1-277.1. By order dated August 25, 2006, the J&DR court found Harris's constitutional right to counsel and the time requirements of Code § 16.1-277.1 were violated at the June 30 hearing and that the J&DR court improperly extended the 120-day provision without a written basis for good cause. Finding the terms of Code § 16.1-277.1 mandatory, the J&DR court dismissed the petitions.

On September 14, 2006, the Commonwealth filed a motion to vacate the J&DR court's August 25 order. The J&DR court vacated the August 25 order and took the matter under

advisement. Following arguments of counsel, the J&DR court scheduled a new transfer hearing for November 1, 2006.

At the transfer hearing, defense counsel cross-examined Pedro Fernandez-Diaz (Diaz), the victim of the offenses. The J&DR court found probable cause and transferred the matters to the circuit court for a trial. Harris also signed an "Agreement Setting Case for Trial" specifying by his agreement with the Commonwealth, that trial was set for December 13, 2006, at 9:30 a.m., without a jury. Above Harris's signature, the agreement provided, in relevant part, as follows:

> THE COURT ADVISES [HARRIS] OF THE RIGHT TO BE
> PRESENT FOR AND DURING THE TRIAL . . ., THAT
> FAILURE TO APPEAR MAY BE DEEMED A WAIVER OF
> THAT RIGHT, AND THAT THE TRIAL MAY BE HELD IN
> [HARRIS'S] ABSENCE; . . . BY INITIAL [HARRIS]
> ACKNOWLEDGES THAT THE FOREGOING SENTENCE
> WAS READ TO [HIM] BY THE COURT.

In addition, the form provided that the J&DR court "certified that all times [Harris] was present in person along with counsel" and also contained the J&DR judge's signature. On November 13, 2006, a grand jury of the circuit court indicted Harris on charges in connection with the robbery.

On December 13, 2006, defense counsel appeared but Harris was not present. The trial court proceeded to take the testimony of Diaz. Diaz testified that he was in the United States illegally and that he planned to return to Mexico on December 22, 2006. He intended to return to the United States in May 2007 but he did not have a return ticket. He stated that his wife and two children lived in Mexico. Diaz also testified as to the events surrounding the offenses. Defense counsel cross-examined him. Following the December 13 hearing, the trial court entered an order dated December 18, 2006, issuing a capias for Harris's arrest and continuing the matters generally pending Harris's apprehension.[1]

---

[1] Although the joint appendix does not contain the December 18, 2006 order, the record does. In considering a case on appeal, we may look beyond the appendix into the record, but we are not required to do so. See Rule 5A:25(h).

After Harris was apprehended, the trial court conducted a status hearing on January 9, 2007. At the status hearing, the trial court scheduled a motions hearing for February 14, 2007 and set trial for March 22, 2007.

On February 14, 2007, Harris moved to dismiss the charges because neither he nor his counsel had been present at the June 30, 2006 hearing where the J&DR court extended the 120-day requirement. The trial court held that although the June 30 hearing "wasn't appropriate," the J&DR court subsequently employed the correct remedy by conducting a new transfer hearing on November 1, 2006. The trial court also found Harris suffered no prejudice. In addition, Harris moved to exclude Diaz's testimony taken at the December 13, 2006 hearing in violation of his right to confront the witness. The trial court deferred decision on the motion to exclude.

On March 21, 2007, the trial court held an additional hearing on Harris's motion to exclude. The Commonwealth noted that on January 10, 2007, the Commonwealth issued a subpoena to Diaz at his last known address that was returned "not found." A notation on the subpoena indicated Diaz no longer resided at the address. The Commonwealth proffered that Officer Doyal would have testified that he speaks Spanish and that he visited Diaz's last known address several times but did not locate him. The Commonwealth further proffered that Officer Dew also would have testified that he attempted to contact Diaz but was unsuccessful. Investigator Valentine testified that he contacted the International Criminal Police Organization regarding Diaz but received no response. On February 21, 2006, he went to Diaz's last known address and spoke to a man who informed him that Diaz planned to return to Virginia. He also visited Diaz's relatives who attempted to contact Diaz by telephone without success. The trial court found that "the Commonwealth ha[d] taken whatever steps they reasonably [could] at [that] point to try to find [Diaz]."

The trial court further concluded that Harris was "given notice[] that his failure to appear would result in trial in his absence, and he was given notice of the [originally scheduled December 13, 2006] trial date." The trial court found that, by voluntarily choosing not to appear at the December 13, 2006 proceeding, Harris had "voluntarily waived his presence and voluntarily waived his right to be [there]." Accordingly, the trial court admitted Diaz's transcribed testimony from the December 13, 2006 hearing into evidence.

Harris was subsequently convicted as charged, and this appeal followed.

## II. MOTION TO DISMISS

Harris contends the trial court erred in refusing to grant his motion to dismiss. To support that contention, he claims he was denied a substantive right when he was not granted an adjudicatory or transfer hearing within 120 days of the filing of the petitions charging him with the instant offenses, as required by Code § 16.1-277.1(B). Relying on Jamborsky v. Baskins, 247 Va. 506, 442 S.E.2d 636 (1994), he asserts that the right is substantive because Code § 16.1-277.1 contains prohibitory or limiting language. He further claims the J&DR court failed to note the basis of good cause for extending the 120 days in writing and that the remedy for the statutory violations is dismissal of the charges.

Code § 16.1-277.1(B) provides as follows:

> If a child is not held in secure detention or is released from same after having been confined, an adjudicatory or transfer hearing on the matters charged in the petition or petitions issued against him *shall be conducted within 120 days from the date the petition or petitions are filed.*

(Emphasis added). Code § 16.1-277.1(D) provides that the 120-day limitation "may be extended by the court for a reasonable period of time based upon good cause shown, provided that the basis for such extension is recorded in writing and filed among the papers of the proceedings." Here, however, no such finding of good cause was properly made. The question before us, then,

is whether the J&DR court's failure to timely conduct an adjudicatory or transfer hearing on the matters charged in the petitions requires the dismissal of those matters. We conclude it does not.

In Jamborsky, the Supreme Court of Virginia decided whether compliance with the 21-day limitation contained in Code § 16.1-269(E) was a jurisdictional requirement for the transfer of a juvenile to the circuit court for trial as an adult. In making that determination, the Court noted as follows:

> When asked to determine whether various provisions relating to juvenile transfer proceedings are jurisdictional in nature, this Court has analyzed those provisions to determine whether they impart a substantive right to the juvenile or merely impose a procedural requirement.

Jamborsky, 247 Va. at 509, 442 S.E.2d at 637. The Court further found that "none of Baskins's substantive rights was infringed as a result of the three-day delay in the circuit court's assumption of jurisdiction over his felony charges." Id. at 511, 442 S.E.2d at 638. Additionally, the Court explained that:

> The procedural nature of this requirement is underscored by this Court's repeated holding that the use of "shall," in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent. As this Court explained in Commonwealth v. Rafferty, 241 Va. 319, 402 S.E.2d 17 (1991), "[a] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute." Id. at 324, 402 S.E.2d at 20. Thus, in construing former Code § 18.2-268(Q), which provided that an executed certificate of refusal to take a blood or breath test "shall be attached to the warrant," this Court held in Rafferty that the magistrate's failure to attach the certificate as required was not essential to the validity of the proceeding on that charge. Id. at 324-25, 402 S.E.2d at 20.

Id. (citation omitted). Noting that the statute contained "no prohibitory or limiting language" and that "Baskins did not suffer any prejudice as a result of the delay," the Court held that the 21-day time requirement was procedural in nature. Id. at 511, 442 S.E.2d at 638-39.

- 6 -

The same rationale applies here. Code § 16.1-277.1(B) imparts no substantive right. Rather, in setting forth the time within which the adjudicatory or transfer hearing should be held, the statute merely directs the mode of proceeding by the J&DR court. The language in the statute is not prohibitory or limiting. Indeed, the statute does not expressly prohibit the court from conducting the transfer or adjudicatory hearing beyond the 120 days absent good cause. Nor is there any language in the statute that renders invalid an adjudicatory or transfer hearing held beyond the 120 days absent good cause. Thus, finding no manifestation of a contrary intent in the statute, we hold the provisions of Code § 16.1-277.1(B) are directory and procedural, rather than mandatory and jurisdictional. See also Horner v. Dep't of Mental Health, 268 Va. 187, 194, 597 S.E.2d 202, 206 (2004) (holding that Code § 2.2-3006(B)'s requirement that the court "shall" hear the appeal within 30 days of receipt of the grievance record is directory and procedural, not mandatory); Butler v. Commonwealth, 264 Va. 614, 620, 570 S.E.2d 813, 816 (2002) (holding that Code § 8.01-353's requirement that a copy of the jury panel "shall" be made available to counsel upon request is directory and not mandatory); Nelson v. Warden of the Keen Mountain Corr. Ctr., 262 Va. 276, 285, 552 S.E.2d 73, 78 (2001) (holding that failure to comply with Code § 16.1-263(A)'s requirement of notice to parents of juvenile proceedings renders convictions voidable, and not void); Tran v. Bd. of Zoning Appeals, 260 Va. 654, 658, 536 S.E.2d 913, 916 (2000) (holding that Code § 15.2-2312's requirement that the Board of Zoning Appeals "shall" make its decision within 90 days is directory and not mandatory); Commonwealth v. Wilks, 260 Va. 194, 200, 530 S.E.2d 665, 667 (2000) (holding that Code § 19.2-386.3(A)'s requirement that the Commonwealth "shall" file notice of seizure within 21 days of receipt of notice from the agency is directory and procedural); Jackson v. Commonwealth, 255 Va. 625, 643, 499 S.E.2d 538, 549 (1998) (holding that Code § 16.1-269.6(B)'s requirement that the court "shall" within a reasonable time conduct a transfer

review is procedural); <u>Turner v. Commonwealth</u>, 216 Va. 666, 669, 222 S.E.2d 517, 520 (1976) (holding that failure to comply with Code § 16.1-176(a)(3)'s requirement of written notice of the hearing, where defendant and his father had oral notice and where defense counsel was notified, was a procedural violation); <u>Kidder v. Virginia Birth-Related Neurological Injury Comp. Program</u>, 37 Va. App. 764, 772, 560 S.E.2d 907, 911 (2002) (holding that Code § 38.2-5004(D)'s requirement that the program "shall" have 30 days to file a response to the petition is not jurisdictional); <u>Carmon v. Commonwealth</u>, 21 Va. App. 749, 754, 467 S.E.2d 815, 818 (1996) (holding that failure to comply with Code § 63.1-252.1's requirement that the administrative support order "shall" become effective unless contested within 10 days is not a jurisdictional bar); <u>J.B. v. Brunty</u>, 21 Va. App. 300, 305, 464 S.E.2d 166, 169 (1995) (holding that Code § 63.1-248.6(D)(7)'s requirement that the local department "shall" determine within 45 days if a report of abuse is founded or unfounded is directory and procedural, and not mandatory).

Moreover, nothing in the record indicates that Harris suffered any prejudice constituting a denial of due process as a result of the transfer hearing occurring beyond Code § 16.1-277.1(B)'s time limitation. <u>See</u> <u>Jamborsky</u>, 247 Va. at 511, 442 S.E.2d at 639 ("Any determination whether a defendant has suffered prejudice constituting a denial of due process must be made on a case-by-case basis."); <u>Butler</u>, 264 Va. at 620, 570 S.E.2d at 816-17; <u>Williams v. Commonwealth</u>, 43 Va. App. 1, 7, 595 S.E.2d 497, 500 (2004). Consequently, the J&DR court's delay in conducting the transfer hearing was not a ground for dismissing the charges against Harris.

Furthermore, once the grand jury returned indictments in the circuit court on November 13, 2006, the alleged defects in the transfer proceedings by the J&DR court were "cured by the indictment[s]," pursuant to Code § 16.1-269.1(E). <u>See</u> <u>Shackleford v. Commonwealth</u>, 262 Va. 196, 205-06, 547 S.E.2d 899, 904-05 (2001); <u>Moore v. Commonwealth</u>, 259 Va. 405, 410, 527

S.E.2d 415, 418 (2000); Overdorff v. Commonwealth, 45 Va. App. 222, 226-27, 609 S.E.2d 626, 628 (2005); Williams v. Commonwealth, 33 Va. App. 725, 728, 536 S.E.2d 916, 918 (2000); Scott v. Commonwealth, 31 Va. App. 461, 465-66, 524 S.E.2d 162, 164 (2000); see also Nelson, 262 Va. at 285, 552 S.E.2d at 78 (indicating that an error based on the failure to comply with Code § 16.1-263(A), providing notice to parents of juvenile proceedings, must be preserved by filing a motion to dismiss in the circuit court before indictment by the circuit court).

### III.  MOTION TO EXCLUDE

Harris further contends the trial court erred in refusing to exclude the transcribed testimony of Diaz.  Citing Longshore v. Commonwealth, 260 Va. 3, 530 S.E.2d 146 (2000), Harris argues the requirements for introducing prior testimony were not met.  We disagree.

In Longshore, the Supreme Court of Virginia reiterated the general requirements that must be satisfied before prior testimony of a witness may be admitted at a later proceeding.  The requirements are as follows:

> (1) that the witness is presently unavailable; (2) that the prior testimony of the witness was given under oath (or in a form of affirmation that is legally sufficient); (3) that the prior testimony was accurately recorded or that the person who seeks to relate the testimony of the unavailable witness can state the subject matter of the unavailable witness's testimony with clarity and in detail; and (4) that the party against whom the prior testimony is offered was present, and represented by counsel, at the preliminary hearing and was afforded the opportunity of cross-examination when the witness testified at the preliminary hearing.

Id. at 3-4, 530 S.E.2d at 146; see also Schneider v. Commonwealth, 47 Va. App. 609, 613, 625 S.E.2d 688, 690 (2006) ("[O]ur law regarding the admissibility of preliminary hearing testimony has always required unavailability and an opportunity for cross-examination and complies with the new requirements of Crawford [v. Washington, 541 U.S. 36 (2004),] without alteration.").

In this case, Harris alleges only that conditions one and four of the Longshore requirements were not met.  As to the first condition, he argues the Commonwealth did not

- 9 -

exercise due diligence in procuring Diaz's presence at trial. Specifically, he claims the

Commonwealth should have subpoenaed Diaz when he disclosed at the December 13 hearing

that he was leaving the United States later in the month. As to the fourth condition, he argues he

was not present at the December 13, 2006 hearing when Diaz testified.

A. Unavailability of the Witness

"We review the trial court's determination of unavailability of a witness for the purpose

of establishing admissibility of prior sworn testimony utilizing an abuse of discretion standard."

Sapp v. Commonwealth, 263 Va. 415, 423, 559 S.E.2d 645, 649 (2002). "The party offering the

testimony bears the burden of establishing the witness' unavailability." Bennett v.

Commonwealth, 33 Va. App. 335, 347, 533 S.E.2d 22, 28 (2000) (en banc).

> Where unavailability is premised upon a witness' absence
> from trial, the party offering the prior testimony must demonstrate
> the exercise of due diligence and reasonable efforts to obtain the
> presence of the witness. In such circumstances, "[d]ue diligence is
> that amount of prudence as is properly to be expected from, and
> ordinarily exercised by, a reasonable and prudent man under the
> particular circumstances." Further, "[d]ue diligence requires only
> a good faith, reasonable effort; it does not require that every
> possibility, no matter how remote, be exhausted."

Morgan v. Commonwealth, 50 Va. App. 369, 375, 650 S.E.2d 541, 544 (2007) (quoting

McDonnough v. Commonwealth, 25 Va. App. 120, 128-29, 486 S.E.2d 570, 574 (1997)).

In Morgan, we determined whether the Commonwealth exercised due diligence to

procure the presence of the victim of the crime who had been deported by the United States

government. In that case, the victim did not appear at the defendant's jury trial as a witness but

had previously testified and was subject to cross-examination at a preliminary hearing and at a

suppression hearing. Id. at 371, 650 S.E.2d at 542. In considering the Commonwealth's efforts,

we noted that the Commonwealth, aware of the pending deportation of the victim,

"communicated with her immigration attorney seeking to postpone or extend those [deportation]

- 10 -

proceedings until after trial." Id. at 376, 650 S.E.2d at 544. We also noted that more than two months before the trial date, the Commonwealth advised the United States Immigration authorities of the victim's subpoenas, the trial date, and her role as a victim and crucial witness, but never received a response. Id. at 376, 650 S.E.2d at 544-45. Applying the McDonnough standard of determining due diligence, we concluded the trial court did not abuse its discretion in finding the witness was unavailable. Id. at 379, 650 S.E.2d at 546.

Applying these principles to the facts of this case, we conclude the trial court did not abuse its discretion in finding the Commonwealth exercised due diligence and reasonable efforts to obtain Diaz's presence at trial. At the conclusion of the December 13 hearing, the trial court continued the matters generally until Harris was apprehended. After Harris was apprehended, the trial court conducted a status hearing on January 9, 2007, during which it scheduled trial for March 22, 2007. The following day, on January 10, 2007, the Commonwealth promptly issued a subpoena to Diaz at his last known address that was returned "not found" and a notation on the subpoena indicated Diaz no longer resided at the address. Three officers repeatedly visited Diaz's last known address questioning the residents and family members as to Diaz's whereabouts and whether he planned to return to Virginia, all to no avail. In addition, an investigator contacted the International Criminal Police Organization but received no response to his inquiry. Under these circumstances, we agree with the trial court that the Commonwealth exercised "that amount of prudence as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances." Morgan, 50 Va. App. at 375, 650 S.E.2d at 544.

Furthermore, we disagree with Harris that due diligence required the Commonwealth to subpoena Diaz immediately after he testified at the December 13 hearing, knowing that he planned to leave the United States later in the month. Because Harris absconded and missed the

- 11 -

December 13 hearing, the trial court continued the matter until he was apprehended and did not reschedule the trial. It is clear, therefore, that the Commonwealth could not issue a subpoena at that time for an undetermined trial date that would occur sometime in the future.

Moreover, Diaz also testified that he planned to return to the United States. Thus, the Commonwealth reasonably understood that Diaz would be present in the future.

Accordingly, we cannot say the trial court abused its discretion in finding the Commonwealth exercised due diligence and reasonable efforts in good faith to procure Diaz's attendance at trial.

### B. Presence During the Witness' Testimony

In this case, Harris signed an agreement at the transfer hearing that specifically set his trial for December 13, 2006, at 9:30 a.m. The agreement also expressly advised Harris of his right to be present at that proceeding, and informed him of the possibility that the trial would proceed in his absence. It is clear, therefore, that Harris knew that testimonial evidence could be presented against him at the December 13, 2006 proceeding, even if he were not present at the proceeding. In fact, Harris's counsel appeared on December 13 and cross-examined Diaz. Nonetheless, Harris voluntarily chose not to appear at that proceeding.

Thus, Harris's failure to personally confront Diaz was of his own doing and not the result of any impropriety on the part of the trial court or the Commonwealth. Accordingly, we reject Harris's claim that his failure to be present at the December 13 hearing and his resulting inability to personally confront Diaz required the exclusion of Diaz's testimony. Under the circumstances of this case, we agree with the trial court that Harris waived his right to personally confront Diaz when he failed to appear at the December 13 proceeding. See United States v. Johnpoll, 739 F.2d 702, 710 (2d Cir. 1984) (holding that the appellant waived his Sixth Amendment right of confrontation when he and his attorney voluntarily chose not to attend the deposition of an

adverse witness); <u>cf.</u> <u>Cruz v. Commonwealth</u>, 24 Va. App. 454, 463-64, 482 S.E.2d 880, 885 (1997) (holding that the appellant knowingly and voluntarily waived his right to be present at trial when he was voluntarily absent from trial despite having written "notice both of the trial date and the possibility he would be tried in his absence if he failed to appear").

## IV.  CONCLUSION

For these reasons, we affirm the trial court's judgment and Harris's convictions.

<u>Affirmed.</u>